No. 2257.—G. DE FERIET *v.* BANK OF AMERICA.

In this case, the evidence shows that plaintiff kept a bank account with defendant; that the book-keeper of plaintiff kept the cash account, made the deposits, etc., and that his rela-tion toward plaintiff were well understood in the bank; that the book-keeper of plaintiff drew a check on the bank for $2500, to which he forged plaintiff's signature, which was an amount above the account to the credit of plaintiff in the bank; that notice was given by the bank that plaintiff had overdrawn his account, who, on being shown the check for $2500, said he had not signed it, but did not say that it was a forgery. On seeing his book-keeper, he reported back to the bank that it was all right. Subsequently the book-keeper drew another check on the bank for $1700, and again forged the signature of the plaintiff thereto, which the bank paid on presentation. On discovering the second forgery by the book-keeper, six months after the first, plaintiff denounced the act.

Held—That the act of the plaintiff, in ratifying the first act of forgery made by his book-keeper, exonerated the bank from all liability for having paid it; that his afterward keeping the book-keeper in his confidential employ misled the bank and threw it off its guard; that, having approved and ratified the first forgery, the bank was excused for paying subsequent checks similarly drawn; that the plaintiff had by his own acts caused the injury, and he must therefore bear the loss.

APPEAL from the Fourth District Court, parish of Orleans. *Théard,* J. *A. Robert,* for plaintiff and appellee. *Johnson & Dennis,* for defendant and appellant.

HOWELL, J. Plaintiff claims $2425 41 as the balance due him on deposit. The defendant denies any indebtedness, and avers that plaintiff has overdrawn his account to the amount of $1774 59, as shown by his checks, which sum is claimed in reconvention. To this demand plaintiff answers, denying the genuineness of his signature to two of said checks, one for $2500, dated and paid on the thirty-first December, 1867, and one for $1700, dated fourth and paid sixth January, 1868.

There is no contest before us as to the forgery of those two checks; but defendant and appellant contends that plaintiff, by his conduct in the premises, has justified the bank in receiving and paying them as genuine, and therefore is liable for the amount so overdrawn. When the first of these checks was paid, an overdraft was discovered and immediately reported to plaintiff, who expressed great surprise, and stated that he had drawn no check on that day. Upon going to the bank to investigate the matter, he was told that it was all right, the check had been made good by a deposit. The check was handed to him, and after being carefully examined by him was returned without any remark, as the bank clerk testifies, but he says he stated it had not been signed by him. On his way back to his office he met his book-keeper, who had the sole charge of his bank account and cash, told him of the discovery he had made that the latter (the book-keeper) had counterfeited his signature to the check for $2500, and asked him if that was the only loss he would sustain, and on being assured it was, he determined to bear it, and not expose the matter, and continued the book-keeper in his employment as before, until about the sixth or seventh of January following, when he discovered

and denounced the forgery of the check for $1700. The signature to each was in the handwriting of the book-keeper, who, to provide for them, deposited to plaintiff's credit certain checks drawn to the order of plaintiff by a young clerk of the latter, on other banks, and indorsed thus: "For deposit, G. De Feriet, per E. Davenport," the book-keeper. The first of these deposits, made of thirty-first of December, 1867, was realized, and produced a surplus, which was drawn on by several genuine checks of the plaintiff. The check forming the second deposit was returned dishonored, thus producing the overdraft claimed in reconvention.

Under these circumstances, it is clear that the plaintiff can not be heard to disavow the check for $2500. The case of Etting v. Commercial Bank, 7 R. 459, rests on very different facts. So far as was in his power, he condoned this offense of his book-keeper, and made the transaction his own. He could but have known that the deposit made to cover this overdraft was not made with his funds, and that consequently the payment of said check resulted in no injury or loss to him, but that really his balance was increased by the said deposit, out of which his subsequent checks were paid. The only point upon which any doubt can be raised is whether he is liable for the overdraft resulting from the payment of the second forged check.

In the case of Duconge v. Forgay, it was held that an authorization to indorse other promissory notes can not be inferred from the fact that the party whose name was forged on them did not publicly denounce the forgery which first came to his knowledge, nor will the neglect to denounce the crime to the public authorities make such party responsible for other forgeries of his name, then unknown to him, or give rise to an action for damages under articles 2294 and 2295, C. C. But here the plaintiff is sought to be made liable, not simply for his failure to denounce the forgery to the public authorities when brought to his knowledge, but because by his words and acts he threw the bank off of its guard and enabled the guilty person to repeat the fraud upon the same party. In the case of Forgay, the forger was a friendly acquaintance, but not in his employment, and rather than expose his friend, he guaranteed the payment to the holder of the forged indorsement first made known to him; but when sued by another and different party on another forged indorsement, he was relieved from liability, on the principle above stated. In this case, however, the forger was the confidential clerk of plaintiff, had charge of his bank book, made deposits and kept his cash and bank accounts; when plaintiff discovered the first forgery he used ambiguous language to the bank officer, continued the forger in the same confidential position, sanctioned the deposit made to meet the forged check, drew upon the surplus remaining after replacing the overdraft, and thus relieved the bank from the charge of

imprudence in paying a subsequent check similarly signed. Indeed, a careful examination of the evidence will leave a well founded doubt as to whether the bank was made aware that the check for $2500 was actually a forgery until after the payment of the one for $1700. The only direct evidence on this point is the statement of plaintiff himself, when called to the stand the second time, that upon returning said check to the bank clerk he remarked it had not been signed by him, and his first declaration, before going to the bank, that he had drawn no check that day. The officers of the bank may have inferred that, although not signed by the plaintiff himself, he did not consider it a forgery. Be this as it may, we are led to the conclusion that the peculiar facts and circumstances of this case, taken together, must relieve the bank from the stringent rule that the depositary must take care to pay none but the checks or drafts of the depositor himself or his acknowledged special agent, and that this is a proper case to apply the equitable principle that where one of two innocent parties must suffer, it should be he who was the cause or occasion of the confidence and consequent injury of the other.

It is therefore ordered that the judgment appealed from be reversed, and that defendant recover of plaintiff the sum of $1774 59, with legal interest from sixth January, 1868, and costs in both courts.

Rehearing refused.