DE FREES CRITTEN et al., Respondents, *v.* THE CHEMICAL NATIONAL BANK, Appellant.

1. BANKING — ALTERATION OF CHECKS — LIABILITY OF DRAWER. While the drawer of a check may be liable where he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alteration, he is not bound so to prepare the check that nobody else can successfully tamper with it.

2. DEPOSITOR'S DUTY TO VERIFY RETURNED VOUCHERS. A bank depositor owes to the bank the duty of exercising reasonable care to verify returned vouchers by the record kept by him of the checks he has issued, for the purpose of detecting forgeries or alterations.

3. DEPOSITOR'S LIABILITY FOR NEGLIGENCE IN EXAMINATION OF VOUCHERS. A depositor by neglecting his duty in this respect, or by failing to discover and notify the bank of forgeries, does not, however, adopt raised checks as genuine and ratify their payment or estop himself from asserting that they are forgeries — his liability is limited to the damages sustained by the bank in consequence of such neglect.

4. PAYMENT OF RAISED CHECKS BEFORE ACCOUNT IS BALANCED. A bank is not relieved from liability for raised checks, which it had paid before the account was balanced, by the failure of the depositor to subsequently discover the alterations, unless thereby the bank has lost an opportunity to obtain restitution.

5. WHEN BANK RELIEVED FROM PAYMENT AFTER ACCOUNT IS BALANCED. A bank is, however, relieved from responsibility for raised checks which it paid after the account was balanced, by the negligence of the depositor in the examination of the returned vouchers and comparison with stubs of his check book which would have disclosed the alterations and prevented the subsequent frauds, in the absence of negligence on the part of the bank in paying the checks.

6. RESPONSIBILITY OF DEPOSITOR FOR NEGLIGENCE OF CLERK. A bank depositor is chargeable with the knowledge of the fraudulent alteration of checks possessed by his clerk to whom he intrusted the examination of the vouchers, and with his negligence, or failure in the verification of the accounts, although the clerk is the one who made the alterations, where the comparison of the checks with the stubs in the check book would have disclosed such alterations to an innocent party previously unaware of the forgeries, since in such a case he is responsible for the manner in which the clerk performs his task, although he is the forger.

7. CONTRIBUTORY NEGLIGENCE OF BANK. The negligence of a bank in paying to a clerk of a depositor a check which had plainly been altered by the substitution of the word "cash" for the name of the payee over an erasure and on which the number of dollars was also written over an erasure, without making inquiry as to the reason or authority for the alteration, not only places upon the bank the responsibility for the loss thereby sustained, but contributes to the successful continuance of a series of similar forgeries by the clerk so as to defeat the liability of the depositor for loss to the bank from the payment of altered checks subsequent thereto, on the ground of his negligence in respect to the examination of returned vouchers.

8. PLEADING — ACTION ON CONTRACT — EFFECT OF ALLEGATION OF NEGLIGENCE. An action on contract by a bank depositor for the amount of altered checks over and above the sums for which they were originally drawn is not changed to an action in tort by an allegation of contributory negligence in the reply, used only to defeat the defense of negligence on the part of the depositor raised by the answer.

*Critten* v. *Chemical Nat. Bank*, 60 App. Div. 241, modified.

(Argued April 10, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 20, 1901, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George H. Yeaman* and *George C. Kobbé* for appellant. The drawer is bound for the whole amount if his own negligence has facilitated or invited the fraud done by raising the check. (*Bank of Commerce* v. *Union Bank*, 3 N. Y. 230 ; 2 Daniel on Neg. Inst. [2d ed.] 608, § 1659; *Goddard* v. *M. Bank*, 4 N. Y. 147; *L. T. & T. Co.* v. *N. Nat. Bank*, 2 Bank Cas. [Penn.] 588 ; *I. C. Bank* v. *F. P. Nat. Bank*, 159 Penn. St. 47.) The bank is not responsible if the depositor has been negligent in examining his accounts and vouchers. (*Myers* v. *S. Nat. Bank*, 44 Atl. Rep. 280 ; *L. M. Bank* v. *Morgan*, 117 U. S. 96 ; *Crawford* v. *W. S. Bank*, 100 N. Y. 50 ; *Weinstein* v. *Nat. Bank*, 69 Tex. 38 ; *De Fariet* v. *Bank of America*, 23 La. Ann. 310 ; *Dana* v. *Nat. Bank*, 132 Mass. 156 ; *Nat. Bank* v. *Allen*, 100 Ala. 476 ; *August* v. *F. Nat. Bank*, 1 N. Y. Supp. 139.)

*Benjamin N. Cardozo* and *A. J. Simpson* for respondents. As between the bank and its depositor the bank's liability is the same whether the forgery relates to the signature of the depositor or to the signature of the payee or to the body of the check. (*C. N. Bank* v. *L. & T. Bank*, 119 N. Y. 200 ; *Clark* v. *N. S. & L. Bank*, 32 App. Div. 316.) The plaintiffs exercised due care in issuing checks. (*Crawford* v. *W. S. Bank*, 100 N. Y. 50 ; *Young* v. *Grote*, 4 Bing. 253 ; *Société Générale* v. *Met. Bank*, 27 L. T. [N. S.] 849 ; *Schofield* v. *Earl of Londesborough*, L. R. [App. Cas. 1896] 514 ; L. R. [2 Q. B. 1894] 665 ; *U. C. Bank* v. *M. D. & H. Board*, L. R. [2 Q. B. 1899] 211 ; *S. & M. L. Co.* v. *Eldridge*, 171 Mass. 516 ; *Belknap* v. *Nat. Bank of N. A.*, 100 Mass. 380.) The plaintiffs were not negligent in confiding to Mr. Davis the examination of the canceled vouchers. (*Frank* v. *C. Nat. Bank*, 84 N. Y. 209 ; *Welsh* v. *G. A. Bank*, 73 N. Y. 424 ; *Shipman* v. *Bank S. N. Y.*, 126 N. Y. 318 ; *Weisser* v. *Dennison*, 10 N. Y. 68 ; *Wachsman* v.

*Columbia Bank,* 8 Misc. Rep. 280, 282; *Clark* v. *Nat. S. & L. Bank,* 32 App. Div. 316; 164 N. Y. 498; *Knox* v. *E. M. Co.,* 148 N. Y. 460; *Henry* v. *Allen,* 151 N. Y. 1; *Bienen-stock* v. *Amidown,* 155 N. Y. 47; *A. S. Co.* v. *Panly,* 170 U. S. 133, 157; 2 Pom. Eq. Juris. § 675.) The defendant was guilty of negligence in honoring the checks, and hence it is liable even if the plaintiffs were negligent in examining the vouchers. (*L. M. Bank* v. *Morgan,* 117 U. S. 112; *Vagliano* v. *Bank of England,* L. R. [23 Q. B. D.] 262; *Voorhis* v. *Olmstead,* 66 N. Y. 113, 118; *C. Nat. Bank* v. *Nat. Bank of Com.,* 50 N. Y. 575; *L. M. Bank* v. *Morgan,* 117 U. S. 96; *Amherst College* v. *Ritch,* 151 N. Y. 282; *Bartlett* v. *Goodrich,* 153 N. Y. 421, 424; *Marden* v. *Dorthy,* 160 N Y. 39; *N. H. Co.* v. *Bement & Sons,* 163 N. Y. 505.) The question whether the plaintiffs were negligent either in issu-ing the checks or in intrusting to Davis the examination of the accounts, was, at the utmost, one of fact, and the referee's decision, upon controverted evidence, is binding on this court. (*Castleman* v. *Mayer,* 168 N. Y. 354.) If the plaintiffs were negligent in their comparison of the vouchers the negligence was not the proximate cause of the payment of the checks, and hence it cannot constitute a defense to this action. (*Frank* v. *Chemical Bank,* 84 N. Y. 209, 214; *Mayor, etc.,* v. *Bank of England,* L. R. [21 Q. B. D.] 170; *Bank of Ireland* v. *Evans Charities,* 5 H. L. C. 389; *Swan* v. *N. B. Co.,* 2 H. & C. 175; *Knox* v. *E. M. Co.,* 148 N. Y. 461; *Schmidt* v. *G. Nat. Bank,* 64 Hun, 306; 138 N. Y. 631; *People* v. *Bank of N. A.,* 75 N. Y. 561.)

CULLEN, J. The plaintiffs kept a large and active account with the defendant, and this action is to recover an alleged balance of a deposit due to them from the bank. The plain-tiffs had in their employ a clerk named Davis. It was the duty of Davis to fill up the checks which it might be neces-sary for the plaintiffs to give in the course of business, to make corresponding entries in the stubs of the check book and present the checks so prepared to Mr. Critten, one of the

plaintiffs, for signature, together with the bills in payment of which they were drawn. After signing a check Critten would place it and the bill in an envelope addressed to the proper party, seal the envelope and put it in the mailing drawer. During the period from September, 1897, to October, 1899, in twenty-four separate instances Davis abstracted one of the envelopes from the mailing drawer, opened it, obliterated by acids the name of the payee and the amount specified in the check, then made the check payable to cash and raised its amount, in the majority of cases, by the sum of $100. He would draw the money on the check so altered from the defendant bank, pay the bill for which the check was drawn in cash and appropriate the excess. On one occasion Davis did not collect the altered check from the defendant, but deposited it to his own credit in another bank. When a check was presented to Critten for signature the number of dollars for which it was drawn would be cut in the check by a punching instrument. When Davis altered a check he would punch a new figure in front of those already appearing in the check. The checks so altered by Davis were charged to the account of the plaintiffs, which was balanced every two months and the vouchers returned to them from the bank. To Davis himself the plaintiffs, as a rule, intrusted the verification of the bank balance. This work having in the absence of Davis been committed to another person, the forgeries were discovered and Davis was arrested and punished. It is the amount of these forged checks, over and above the sums for which they were originally drawn, that this action is brought to recover. The defendant pleaded payment and charged negligence on plaintiffs' part, both in the manner in which the checks were drawn and in the failure to discover the forgeries when the pass book was balanced and the vouchers surrendered. On the trial the alteration of the checks by Davis was established beyond contradiction and the substantial issue litigated was that of the plaintiffs' negligence. The referee rendered a short decision in favor of the plaintiffs in which he states as the ground of his decision that the plaintiffs were not negligent either in

signing the checks`as drawn by Davis or in failing to discover the forgeries at an earlier date than that at which they were made known to them.

The relation existing between a bank and a depositor being that of debtor and creditor, the bank can justify a payment on the depositor's account only upon the actual direction of the depositor. " The questions arising on such paper (checks) between drawee and drawer, however, always relate to what the one has authorized the other to do. They are not questions of negligence or of liability of parties upon commercial paper, but are those of authority solely. * * * The question of negligence cannot arise unless the depositor has in drawing his check left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come." (*Crawford* v. *West Side Bank*, 100 N. Y. 50.) Therefore, when the fraudulent alteration of the checks was proved, the liability of the bank for their amount was made out and it was incumbent upon the defendant to establish affirmatively negligence on the plaintiffs' part to relieve it from the consequences of its fault or misfortune in paying forged orders. Now, while the drawer of a check may be liable where he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alterations, it is not the law that he is bound so to prepare the check that nobody else can successfully tamper with it. (*Société Générale* v. *Metropolitan Bank*, 27 L. T. [N. S.] 849 ; *Belknap* v. *National Bank of North America*, 100 Mass. 380.) In the present case the fraudulent alteration of the checks was not merely in the perforation of the additional figure, but in the obliteration of the written name of the payee and the substitution therefor of the word " cash." Against this latter change of the instrument the plaintiffs could not have been expected to guard, and without that alteration it would have no way profited the criminal to raise the amount. Apart, however, from that consideration the question was clearly one of fact to be determined largely by an inspection of the checks themselves. They are not produced before us,

and we cannot say that the finding of the referee, that the plaintiff was guilty of no negligence in signing them in the condition in which they were presented for signature, was without sufficient evidence for its support.

We are now brought to the consideration of the finding of the referee that the plaintiffs were not guilty of negligence in failing to discover the forgeries after the return of the checks and the balancing of the account in the pass book. Preliminarily we must determine what duty the depositor owes to his bank by way of examination and verification of his checks and account, for the learned counsel for the respondent asserts that no such duty in reality exists. This contention is principally based on the authority of *Weisser's Admrs.* v. *Denison* (10 N. Y. 68). In that case a depositor sued his bank for the amount of certain checks to which his signature was forged by his clerk. His pass book was balanced and vouchers returned at intervals as in the present case. At the trial he recovered a verdict for the full amount of the forgeries. On appeal the General Term of the Superior Court ordered a reversal of the judgment unless the plaintiff would reduce his recovery to the amount paid on the forged checks prior to the time when the bank book was first balanced and vouchers returned. To this reduction the plaintiff assented, and, on the defendant's appeal, the judgment as modified was affirmed by this court. In the opinions delivered by two distinguished judges the doctrine is asserted that the depositor owes no duty to the bank to examine his pass-book or vouchers with the view to the detection of forgeries, but the decision itself is not authority for more than the proposition that the bank was not relieved from liability for forged checks which it had paid before the account was balanced by the failure of the depositor to subsequently discover the forgeries. As was said by Judge JOHNSON as to these checks, " Whatever loss the bank has sustained, it has suffered from its own negligence or want of skill in a matter as to which, in the first instance, it and it only was bound to exercise skill and diligence. To this loss no act of Weisser has contributed." The question again came before

15

this court in the case of *Frank* v. *Chemical National Bank of New York* (84 N. Y. 209). That action also was brought to recover the amount of a series of checks forged by the depositor's clerk. A recovery by the plaintiffs was upheld, though not on the principle that the depositor owed no duty to his bank, but on the ground that he had discharged that duty. In the opinion there delivered Judge ANDREWS said : " It does not seem to be unreasonable, in view of the course of business and the custom of banks to surrender its vouchers on the periodical writing up of the accounts of depositors, to exact from the latter some attention to the account when it is made up or to hold that the negligent omission of all examination may, when injury has resulted to the bank, which it would not have suffered if such examination had been made and the bank had received timely notice of objections, preclude the depositor from afterward questioning its correctness. But where forged checks have been paid and charged in the account and returned to the depositor, he is under no duty to the bank so to conduct the examination that it will necessarily lead to the discovery of the fraud. If he examines the vouchers personally and is himself deceived by the skillful character of the forgery, his omission to discover it will not shift upon him the loss which in the first instance is the loss of the bank." In that case the depositor compared the returned checks with the stubs in the check book, but was deceived by the fact that the forger had abstracted the forged checks from the package. In the Supreme Court of the United States and in several of our sister states the rule is settled that the depositor owes his bank the duty of a reasonable verification of the returned checks. In *Leather Manufacturers' Bank* v. *Morgan* (117 U. S. 96) it was held that a depositor is bound personally or by his agent, and with due diligence, to examine the pass book and vouchers, and to report to the bank without unreasonable delay any errors which may have been discovered therein, and that if he fails to do so and the bank is thereby misled to its prejudice, he cannot afterwards dispute the correctness of the balance shown in the pass book. In *Dana* v.

*National Bank of the Republic* (132 Mass. 156) the Supreme
Court of Massachusetts said : " The mistake was in the pay-
ment of the money upon an altered check, believed to be
genuine; it was not for the advantage of the defendant, and
its condition was changed by it.   It was in the course of
dealings between the parties in relation to which each owed
duties to the other.   *   *   *      The plaintiffs (depositors)
owed to the defendant (bank) the duty of exercising due dili-
gence to give it information that the payment was unauthor-
ized ; and this included not only due diligence in giving notice
after knowledge of the forgery, but also due diligence in dis-
covering it."   In *Myers* v. *Southwestern National Bank* (193
Penn. St. 1) it was held that the bank was entitled to have the
vouchers which it surrendered with the pass book examined
and if rejected returned within a reasonable time, and that
if this was not done because of the depositor's failure to per-
form his duty in that regard he should not be permitted to
recover.   The same rule of law obtains in Louisiana (*De
Feriet* v. *Bank of America,* 23 La. Ann. 310), in Texas ( *Wein-
stein* v. *National Bank,* 69 Tex. 38) and in Alabama (*First
National Bank* v. *Allen,* 100 Ala. 476).   The course of deal-
ings between banks and their depositors is well known and is
considered at length in the three cases first cited from other juris-
dictions.   The methods of depositors in drawing checks on their
accounts have become much more uniform than at the time
of the decision in *Weisser* v. *Denison* (*supra*).   The practice
of taking checks from check books and entering on the stubs
left in the book the date, amount and name of the payee of
the check issued has become general, not only with large com-
mercial houses but with almost all classes of depositors in
banks.   The skill of the criminal has kept pace with the
advance in honest arts and a forgery may be made so skill-
fully as to deceive not only the bank but the drawer of the
check as to the genuineness of his own signature.   But when
a depositor has in his possession a record of the checks he has
given, with dates, payees and amounts, a comparison of the
returned checks with that record will necessarily expose for-

geries or alterations. It is true that it will give no information as to the genuine character of the indorsements, and because the depositor has no greater knowledge on that subject than the bank, it owes the bank no duty in regard thereto. (*Welsh* v. *German-American Bank*, 73 N. Y. 424; *Shipman* v. *Bank of the State of New York*, 126 N. Y. 318.) It is also true that verification of the returned checks would not prevent a loss by the bank in the case of the payment of a single forged check and probably not in many cases enable the bank to obtain a restitution of its lost money. It would, however, prevent the successful commission of continuous frauds by exposing the first forgeries. That this is a numerous class of frauds is apparent from the number of cases which we have cited, in all of which the forgery was not a single act, but a series of acts extending over a considerable period of time, and the crime was committed by a clerk or employee of the depositor. Considering that the only certain test of the genuineness of the paid check may be the record made by the depositor of the checks he has issued, it is not too much, in justice and fairness to the bank, to require of him, when he has such a record, to exercise reasonable care to verify the vouchers by that record.

While we hold that this duty rests upon the depositor, we are not disposed to accept the doctrine asserted in some of the cases that by negligence in its discharge or by failure to discover and notify the bank, the depositor either adopts the checks as genuine and ratifies their payment or estops himself from asserting that they are forgeries. Such a doctrine would be in conflict not only with the opinions rendered in *Weisser* v. *Denison* (*supra*) but with the decision there actually made. That authority has stood for nearly fifty years and we would not feel justified in now overruling it. Nor, if the question were an open one in this state, would we deem the rule of estoppel or that of ratification a just one. If the depositor has by his negligence in failing to detect forgeries in his checks and give notice thereof caused loss to his bank, either by enabling the forger to repeat his fraud or by

depriving the bank of an opportunity to obtain restitution, he should be responsible for the damage caused by his default, but beyond this his liability should not extend. In the cases cited from the Supreme Court of the United States, from that of Massachusetts and that of Pennsylvania, it is conceded that, if the bank has been guilty of negligence in paying the forged checks, then the doctrine of ratification and estoppel does not apply. It seems to us that the exception is somewhat inconsistent with the principle on which the doctrine rests. Moreover, we see no reason why the bank should be entitled to anything more than indemnity for the loss the depositor's negligence has caused it. In the present case, a check altered by Davis from the sum of $22 to $622 was paid by the defendant to the Colonial Bank, in which Davis had deposited it. Against that bank the defendant has ample recourse. If it were to be held that the plaintiffs are estopped from denying the genuineness of that check as against the defendant, the latter could have no claim against the Colonial Bank, nor is it clear that the plaintiffs would have any direct right of action against that bank. The Colonial Bank took the check solely on the responsibility of Davis. To it the plaintiffs owed no duty. If the plaintiffs and the defendant had never settled their accounts the Colonial Bank could have had no complaint against either party for that cause. A rule which might operate to relieve that bank from the liability it assumed when it collected an altered check merely because the plaintiffs failed in their duty, not to it, but to a third party, should not be upheld. Nor would it operate justly in a case in which the bank had paid a single forgery unless by the depositor's default and delay the bank had lost its opportunity to secure restitution. This question is well discussed by the Supreme Court of Alabama in the case of *National Bank* v. *Allen* (*supra*), and we concur in the view expressed by that court that the liability of the depositor for neglect of his duty to examine and verify his account with the bank is limited to the damages sustained by the bank in consequence of such neglect,

In the present case Davis falsified the additions or totals at the foot of the pages in the check book. But with a few exceptions he did not alter the amounts expressed in the stubs. In no case did he change in the stubs the name of the payee of the check. It is clear, therefore, that at all times a comparison of the returned checks with the stubs in the check books would have exposed the alterations made in the checks. Of course, the knowledge of the forgeries that Davis possessed, from the fact that he himself was the forger, was in no respect to be attributed to the plaintiffs. But we see no reason why they were not chargeable with such information as a comparison of the checks with the check book would have imparted to an innocent party previously unaware of the forgeries. The plaintiffs' position may be no worse because they intrusted the examination to Davis instead of to a third person; but they can be no better off on that account. If they would have been chargeable with the negligence or failure of another clerk in the verification of the accounts, they must be equally so for the default of Davis, so far as the examination itself would have disclosed the facts. We think it plain, therefore, that the finding of the referee that the plaintiffs were not negligent in the examination of the pass book and vouchers is without evidence to sustain it, unless the plaintiffs discharged their duty to the defendant when they committed the examination to a proper clerk and were not responsible for the manner in which the clerk performed the task. From the language of the report of the learned referee it would seem as if this last were the theory on which his decision proceeded. We do not think it can be sustained. If any duty rested on the plaintiffs we do not see why the ordinary rule of principal and agent or master and servant, that the principal or master is liable for the fault of his servant or agent in the master's business, did not apply. This was so held in the case of *Leather Manufacturers' Bank* v. *Morgan* (*supra*), and nothing to the contrary is to be found in *Frank* v. *Chemical National Bank of New York* (*supra*). There it is said: "The alleged duty, at most, only requires the

depositor to use ordinary care; and if this is exercised, whether by himself or his agents, the bank cannot justly complain, although the forgeries are not discovered until it is too late to retrieve its position or make reclamation from the forger." In that case, however, the question of the liability of the principal for the negligence of his clerk did not arise, for the plaintiff made the examination personally. There are exceptions to the general rule of the liability of the master for his employee. But this case does not fall within those exceptions nor within the principle on which those exceptions are based.

These views would render it necessary to reverse the judgment appealed from except for another fact now to be noted. The referee's report is in the form of a short decision and on appeal it is to be presumed that all facts warranted by the evidence and necessary to support the judgment have been found. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Bartlett* v. *Goodrich*, 153 N. Y. 421; *Marden* v. *Dorthy*, 160 N. Y. 39.) The sixth in sequence of these forgeries was a check of June 20th, 1898, for $12.49, altered to the sum of $112.49, with the name of the payee erased and "Cash" written in the place thereof. The teller of the defendant, who paid the check and was a witness on its behalf, testified that the check showed on its face that the word "Cash" had been written in the place for the payee's name over an erasure; that the number of dollars was also written over an erasure; that he did not like the appearance of the check and that it was in such a mutilated condition when it was presented to him that, before paying it, he required Davis to indorse upon the check a receipt for its amount. That the defendant was grossly negligent in paying the check and has only itself to thank for that loss is apparent. But the effect of that negligence did not cease with the payment of the check. The referee might well have found that, had payment of the check been refused or had Davis been required to obtain the indorsement or guaranty of the plaintiffs as to its correctness, the forgeries of Davis would have been exposed and their repeti-

tion would not have occurred. That Davis was able to successfully continue from this time to his arrest a series of forgeries is as fairly attributable to the folly of the bank in paying to a clerk a check of his employers which had plainly been altered without making inquiry as to the reason or authority for the alteration, as it was to any carelessness of the plaintiffs in failing to detect the alteration when the checks were returned to them from the bank. Since we have held that the question in the case was not one of ratification or estoppel, but that the liability of the plaintiffs to the bank was solely for the loss caused by their negligence, it is a complete answer to the defendant's claim that its own negligence contributed to the loss. The learned counsel for the appellant contends that the plaintiffs' cause of action is not based on negligence and that the plaintiffs cannot sue on contract and recover in tort. This claim is without force. The action unquestionably was brought on contract, but it remains such. The plaintiffs sue for a debt to which the defendant answers: We have paid the money, true, not according to your directions, but in compliance with what we believed to be your directions, and your negligent conduct in your duty towards us led us into that error. To which the plaintiffs rejoin: Your own negligence contributed to the loss. All this may be true, yet the plaintiffs recover not in tort but on contract, for the allegation of negligence on the part of the defendant is used only to defeat its claim for relief on account of the plaintiffs' negligence.

It follows that under the authority of *Weisser* v. *Denison* (*supra*) the defendant is not entitled to credit for the two checks paid by it before the account was balanced and vouchers returned. For the third, fourth and fifth checks, amounting to $300, it is entitled to credit, unless it was guilty of negligence in their payment, a fact which is neither found by the referee nor established by the evidence. For the sixth check and the subsequent ones it is not entitled to credit because of its negligence in paying the sixth check.

The judgment should be reversed and a new trial granted,

costs to abide the event, unless the plaintiffs consent to deduct from their recovery the sum of $300 with interest from November 15th, 1899, in which case the judgment, as modified, should be affirmed, without costs of this appeal to either party.

VANN, J. (dissenting). Whether the plaintiffs exercised reasonable care in examining the checks returned as vouchers by the defendant was a question of fact, and, as they intrusted the work to a competent agent and took other precautions, there was evidence to support the finding in their favor, which, after affirmance by the Appellate Division, is conclusive here. (*Amherst College* v. *Ritch*, 151 N. Y. 282.)

In my opinion the judgment below should neither be reversed nor modified, unless the court reaches the conclusion that the plaintiffs had constructive notice of what their agent discovered in examining the checks. The rule which imputes to a principal knowledge acquired by his agent rests upon the presumption that the latter has disclosed all the material facts to the former. This presumption does not extend to a fact which, if disclosed, would subject the agent to a prosecution for crime or defeat a scheme in which he was engaged to defraud his employer. (*Henry* v. *Allen*, 151 N. Y. 1, 9; *Benedict* v. *Arnoux*, 154 N. Y. 715, 728; *Bienenstok* v. *Ammidown*, 155 N. Y. 47, 60; Pomeroy on Eq. Jur. § 675.) The dishonesty of the agent changes the situation, for the necessity of concealing his dishonest acts, in order to prevent exposure and punishment, destroys the presumption which would otherwise prevail that he had made the facts known to his principal. A presumption must be reasonable or it cannot exist, and it would not be reasonable to expect one engaged in executing a fraudulent project to make a disclosure which would not only defeat his purpose but would send him to prison. Knowledge is not imputable when the agent is acting in hostility to his principal, or is engaged in perpetrating or concealing a fraud.

In this case the agent committed the furtive acts and knew

all about them long before he examined the vouchers returned by the bank. He discovered no fraud while making that examination, for he knew all before, and could not discover what he already knew. He found out nothing while acting as agent, but only while acting on his own account. He was still engaged in his scheme to defraud when he made the examination, and concealment was as necessary then as it had ever been. In concealing the fraud he did not act as agent, and he was engaged in concealing the fraud all the time after he began to carry on his system of forgery, and was so engaged when he examined the checks. In *Frank* v. *Chemical Nat. Bank* (84 N. Y. 209) the court said: "It was only because Goodheim was the criminal that the examination did not disclose to them the forgeries. He was not the plaintiffs' agent in issuing the forged paper, nor was he their agent in abstracting the false vouchers and falsifying the books, which was done in aid of his criminal purpose." If Goodheim, whose duty it was to examine the vouchers, discovered nothing imputable to the plaintiffs in that case, how could Davis, in examining the checks, make a discovery binding upon the plaintiffs in this case? Goodheim abstracted the false vouchers, so that the examination made by himself and the depositor would disclose no wrong, except by their absence, and Davis, whose duty it was to use the check punch, so used it as to leave sufficient space next to the dollar sign in which to subsequently cut a figure and thus raise the amount of the check. He also changed the footings at the bottom of the stub page of the check book so as to prepare for the examination. If what Goodheim did was not binding on his principal, how can we say that what Davis did was binding on the plaintiffs? In neither case can the duties of the dishonest agent be so separated as to distinguish the fraud in concealing the forgery from the forgery itself, for each act was part of a single scheme. The forgery, the preparation for concealment and the constant concealment were successive steps in the same transaction. It cannot be held that what Davis would have discovered if he had not been the forger but somebody else, is

imputable to the plaintiffs without also imputing to them
knowledge of the space left to punch out another figure, as
well as of the false footings, for these acts were within the
scope of his employment as much as the examination of the
vouchers.  In every case of successful fraud by an agent, it
is the nature of the duties intrusted to him that enables him
to perpetrate the fraud, and it is erroneous reasoning to say
that if a part of those duties had been intrusted to another
clerk, as he would have found out the facts, they must be
imputed to the principal, because the latter in good faith
assigned such duties to the criminal.

Under the circumstances, it cannot be presumed that Davis
disclosed facts which an honest agent might have discovered
in looking over the checks, but which the former knew before
the checks came to his hands for examination, without sub-
verting the reason upon which the rule of imputed knowledge
is founded.  Entertaining these views, I am compelled to dis-
sent from those expressed in the prevailing opinion, so far as
they are inconsistent with this memorandum, and to vote in
favor of affirmance.

PARKER, Ch. J., HAIGHT and WERNER, JJ., concur with
CULLEN, J.; MARTIN, J., concurs with VANN, J.; BARTLETT,
J., takes no part.

Judgment accordingly.