MORGAN et al. v. UNITED STATES MORTGAGE & TRUST CO.

(Supreme Court, Appellate Division, Fourth Department. March 4, 1908.)

1. BANKS AND BANKING—DEPOSITS—PAYMENT OF FORGED CHECKS—NEGLIGENCE OF DEPOSITORS.

Depositors' agent made the deposits and had the custody of the pass book, and when it was balanced delivered it only with the genuine checks, which were not numerous. The only verification made was to compare such checks with the stubs. If the depositors had inquired of their agent for typewritten check lists, stated in the book to have been returned, forgeries by him against the account would have been discovered. If they had looked at the book they would have seen that the credit balance did not tally with that disclosed by the checks and stubs, and if a computation had been made it would have disclosed that a proper amount of interest had not been credited, as shown by their ledger book kept by the

agent. *Held*, that the depositors did not exercise reasonable care in inspecting the account, and were guilty of gross negligence in failing to avail themselves of the evidence furnished by the bank to discover the forgery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, §§ 438–452.]

2. SAME—QUESTION FOR JURY.

Where a bankbook in the custody of depositors' agent was first balanced August 11th, after forgeries by the agent began, it was proper to submit to the jury the question whether the depositors were negligent in failing, before issuance of another forged check on August 24th, to discover a shortage which a proper examination of the book would have disclosed.

3. SAME.

Banks are held to a strict liability in the payment of forged checks.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, §§ 438–452.]

4. SAME.

Where the drawer has been guilty of negligence, the bank is ordinarily relieved in case of altered paper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, §§ 438–452.]

5. SAME—NEGLIGENCE OF BANK.

A bank account was large and had run for a long time. An agent of the depositors who was forging checks against it was actively in charge thereof. To transfer a part of their deposit to another bank, his principals issued on January 5th a check overdrawing the account about $13,000, and delivered it to their agent to make the transfer. He delayed depositing it, and on the day it reached the bank through the clearing house he went to the bank and stated the account would be overdrawn that day, but would be made good before the bank closed. Later in the afternoon a check to the bank's order on another bank bearing date January 10th, the following day, was issued by the depositors for $14,000, and was deposited by the agent after he had changed its date to the 9th. It was subsequently paid, though close inspection might possibly have discovered the change. The checks forged by the agent were not numbered, and were of a different color from the genuine, but in balancing the account twice prior to the overdraft and the deposit of the altered check, forged checks had been delivered by the bank to the depositors' agent with adequate evidence to detect his fraud, and no suggestion of irregularity had been made. *Held*, that the bank could not be charged with negligence.

McLennan, P. J., and Robson, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by J. Hewitt Morgan and another against the United States Mortgage & Trust Company to recover trust funds deposited with defendant. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals, and from the judgment, plaintiffs also appeal. Reversed, and new trial ordered, unless plaintiffs stipulate to reduce verdict.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Julian T. Davis, for United States Mortgage & Trust Co.
Clarence Lexow, for Morgan and others.

SPRING, J.  The plaintiffs, as trustees of certain trusts created by the will of David P. Morgan, deceased, kept an account of con-

siderable magnitude with the defendant, commencing in March, 1903. The plaintiff Kissell was the more active trustee, and the business of the estate with the defendant was largely conducted by one Hennessey, a trusted employé of the plaintiffs. Hennessey had been for some time in the employ of Kissell on a farm in Morristown, N. J., where the latter resided; and shortly before the deposit was first made in the defendant bank Kissell transferred him to the office in New York, committing to him the charge of the books of this estate. The plaintiffs had unlimited confidence in the integrity of Hennessey, and apparently gave very little inspection or oversight to the work with the performance of which he was charged. Certainly, they never attempted any examination for the purpose of testing the accuracy of the accounts which he kept or the honesty of his transactions with the defendant. The account with the defendant was interest bearing, and yet subject to check. In July, 1905, it was discovered that Hennessey had been depleting the account by forged checks purporting to be signed by the defendant Morgan, as trustee. These inroads on the account aggregated $34,671.84, which the defendant refused to pay. Hennessey commenced uttering the forged checks May 18, 1904, and from that time until June 22, 1905, 28 of these checks were presented to the defendant and charged against the plaintiffs' account. The deposits in the bank were made by Hennessey for the plaintiffs. He had the custody of their pass book, and it was first written up after the forgeries began August 11, 1904, or to that date, and the canceled checks with the book and check list were delivered over to Hennessey, and he receipted for the vouchers and gave the pass book and genuine checks to the plaintiff Kissell. At that time three forged checks had been paid, aggregating in amount $2,092, and on the 12th of August there was another one of $981.33 honored, making at that time $3,073.33, and the defendant conceded its liability to that extent. After this the pass book was balanced in October, 1904, and in January, April, and June, 1905, and the same method was adopted of delivering over the pass book, the typewritten list, and canceled vouchers to Hennessey, taking his receipt therefor. The genuine checks during this period were numbered consecutively from 24 to 89, inclusive. They were of two colors. They bore the rubber stamp of the estate, and were signed by one of the trustees. Hennessey forged the name of the trustee Morgan to the checks which he used, and impressed the name of the estate on them with the rubber stamp to which he always had access. The bank did not itemize the checks on the pass book, but entered the total amount with the explanatory statement "Less cks ret'd per list," giving to Hennessey a separate typewritten list of all these checks. Hennessey removed from the package the forged checks and the typewritten list, delivering to Kissell simply the pass book and the genuine checks. The only verification made by Kissell was to compare the checks delivered to him with the stubs, and, of course, they corresponded. Kissell was an experienced business man. He kept a personal account with the defendant during this

time, and knew the methods adopted by it. The failure to return the check list apparently did not attract his attention. He did not call for it or even compare the total of the sums represented by the checks and stubs with the balance to the credit of the trustees on the pass book. The defendant had furnished abundant evidence to enable the accuracy of the account to be tested, but the trustees failed to avail themselves of it.

In the first place, if they had looked at the pass book they would have observed that the credit balance did not tally with that disclosed by the checks and stubs. In the second place, if they had inquired of their agent for the typewritten list of entries the forgeries would have been discovered. Again, it is to be noted that this was an interest bearing account, part of the time at 2 per cent. and part of the time at 3 per cent. Any computation made would have disclosed that the proper amount of interest was not in fact credited. Hennessey had charge of the ledger book of the plaintiffs, and apparently credited the interest items as if there had been no improper depletion of the account. The proof shows that the checks which were forged were not numbered and of different color from the genuine ones, although the latter were of two different colors; but the forged checks with the genuine ones were returned in August and October to the agent of the plaintiffs, and no suggestion was made of any irregularity. The defendant had a right to assume from the course of dealing adopted that the whole account was satisfactory to the plaintiffs, and that the checks of different color were genuine as well as the others. It does not seem to me that the plaintiffs exercised reasonable care in inspecting this account. They were trustees and were called upon to be vigilant and active in taking charge of the trust estate committed to them. Until the first balancing of the account in August the plaintiffs had no evidence which would have enabled them to discover the forgeries. The defendant, therefore, conceded its liability for the three forged checks honored before that date, and also for one accepted on August 12th for the same reason, as the pass book was not actually delivered to Hennessey until the 16th. On the 24th another forged check was honored by the bank.

The court charged the jury that the plaintiffs were required to make a reasonable examination of the bankbook, and that such an examination would have revealed the discrepancies in the deposit account, and he allowed them to determine whether negligence could be attributed to the plaintiffs for failing to discover the shortage before the issuance of the forged check of $480 August 24th. We think the court was correct in this instruction, and the jury having found with the plaintiffs on that proposition, the sum of $480, with interest, should also be added to the sum confessedly chargeable to the defendant. Whatever examination Kissell made after the pass book was balanced and returned with the vouchers in August was made before September 10th, and such examination was so incomplete that the fraud was not discovered, and the plaintiffs are chargeable with negligence as matter of law for their remissness.

There is another more important and also more difficult proposition. On the 5th of January, 1905, the plaintiffs issued their check against this account for over $14,000 for the purpose of transferring it to a bank in Morristown, N. J., and delivered it to Hennessey to have the account transferred. This was on Thursday. Hennessey did not deposit the check on that day, and on the next day he was asked about it by one of the trustees, and made some excuse, but deposited it on Friday. On Saturday it went through the clearing house, and did not reach the defendant until about noon of Monday, the 9th, as I think the evidence fairly discloses. That check would overdraw the account about $13,000. On Monday morning Hennessey went to the bank, stating that the account would be overdrawn that day, but that it would be made good before the bank closed for the day. Later in the afternoon one of the plaintiffs executed his check to the defendant's order on another bank, bearing date the 10th, for over $14,000, and which was to be deposited with the defendant. Hennessey changed the date of this check to the 9th leaving it at the bank that afternoon and the plaintiffs were credited for it, which made the account good. The check was subsequently paid by the bank on which it was drawn. While a close inspection might possibly have discovered the change in this date, I do not think the defendant is to be charged with negligence either for not discovering it or for assuming that it was fraudulently made even if discovered. A change in the date of a check is not so infrequent as to call for investigation or create suspicion by an officer of a bank. It does not seem to me that the fact the payment of the check of January 5th might have resulted in causing an overdraft is sufficient to establish negligence on the part of the defendant. As already suggested, the account was a large one. It had been running for some time. Hennessey had been the active man in attending to it, and he came promptly on Monday stating frankly that an overdraft might occur, but advising the bank that it would be adjusted during the day.

It is a circumstance also in favor of the defendant that the check on which the date was altered was not against the account of the trustees with the defendant. It was merely the payee, and the check was paid by the drawee. If any criticism had been made at all by the officers of the defendant on account of this possible overdraft, very naturally it would have been made to Hennessey, for he was representing the plaintiffs. There was no need of making any statement to him, for he already knew it, and agreed to make it good that day, which was done. This conduct on his part, instead of exciting suspicion, would be quite likely to confirm in the minds of the officers of the defendant that he was the trusted responsible representative of the plaintiffs, and that the account was honestly overdrawn.

In commenting upon this phase of the case the court prefaced his remarks to the jury with the statement that the plaintiffs were chargeable with negligence in failing to make an examination which would have disclosed the condition of the account prior to January. The only question submitted to the jury as to this alleged

overdraft and its connecting circumstances was whether the defendant was guilty of negligence, and the jury must have so found. At the outset, therefore, in the consideration of this branch of the case, we start with the negligence of the plaintiffs established as matter of law. In other words, by the exercise of ordinary prudence they should have discovered the fraud of their agent long prior to the transaction in January. Banks are held to a strict liability in the payment of forged checks. Shipman et al. v. The Bank of the State of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; The C. N. Bank v. I. & T. Bank, 119 N. Y. 195, 23 N. E. 540. Where, however, the drawer of a check has been guilty of negligence, the bank is ordinarily relieved. Cases cited. In the present case the defendant is not liable at all for receiving for collection the altered check in January unless negligence can be imputed to it as to that particular transaction.

The court allowed the jury to found its verdict ascribing negligence to the defendant on four circumstances, to wit: the fact that the forged checks were not numbered; that in color they did not correspond with the genuine checks; the change in the date of the check of January 10th; and the overdraft. I do not think that these circumstances taken together, in view of the method in which the account was carried along, were sufficient to excite suspicion as to the genuineness of the checks. None of these circumstances are unusual in the banking business. There is no uniformity in the color of checks. The check on which the date was altered was on another bank, and certainly the officer of the defendant who accepted it could not be expected to know just the shade of the checks used by that bank, especially when those of varying colors were in common use. It is also to be remembered that the check on which the date was changed and the one of January 5th transferring the account to the New Jersey bank were both genuine, and the latter was numbered in proper sequence and corresponded in color with those theretofore drawn by Kissell. The fact that the forged checks were not numbered or varied in color from the genuine could not have been in the mind of the bank officers in honoring the altered check properly signed. Again, none of the forged checks had been numbered, and all had been of different color from those signed by the trustees. The defendant had twice before, in August and October, delivered over these unnumbered forged checks to the agent of the defendant with adequate evidence to detect any fraud, and no suggestion had been made even of any irregularity in the account. It therefore had a right to assume that the balances were acceptable to the plaintiffs.

The plaintiffs' account with the defendant was a large one, yet there was much variation in the balances. There were deposits elsewhere, and the defendant's officers had reason to believe the estate was a large one. The dealings with the defendant warranted that belief. Where a large overdraft exists against a small depositor it might give rise to suspicion that something was wrong. A like overdraft in the account of a large depositor, if unnoted by him, should also attract at-

tention. If, however, such a depositor who had long been a continuous and important customer of the bank should advise its officers early in the day that an account would be overdrawn during the day, but would be made good before the close of banking hours, and that promise is kept, there is nothing so extraordinary as to arouse distrust. The moment it is apprised of the expected overdraft, accompanied with the statement that the overdraft will not go into the day's statement, for it will be arranged, the officers are not called upon forthwith to believe there has been crooked work. In the ordinary course of business, where a check is transmitted from one bank to that of the depositor and drawer which will overdraw his account, the check will not be protested until after the close of the bank for the day. The casting up will then disclose whether the check will be honored. There is no necessity of attending to this while the active work of the bank with its customers is in progress, for no remittance will be made during that time. In fact, there was no overdraft, for when the balances were struck at the close of the day's business the account was good. If Kissell had appeared personally, and made the same statement that was made by Hennessey, no suspicion would have been aroused. Hennessey was the man who did the active work on behalf of the plaintiffs with the bank. He represented them. They stood sponsor for him, and his acts in the line of his employment were those of the plaintiffs. He was their alter ego. I think as matter of law these facts establish quite clearly that no negligence can be charged to the defendant for the transaction on January 9th.

The plaintiffs have appealed from the judgment alleging that the court erred in holding the plaintiffs were chargeable with negligence in failing to discover the condition of their account with the defendant commencing with the forged check of September 10th. The trial court in commenting to the jury upon the conduct of the plaintiffs used this expressive language:

"As a matter of law they were bound before the 10th day of September to have made this examination, and were bound as a matter of law to have discovered the trouble which existed with regard to their bank account. So that, as a matter of law, from that time on the plaintiffs must be held guilty of negligence. There is no escape from it. They were bound to have made the examination. They were bound to have discovered the facts prior to the 10th day of September, and as they were guilty of negligence, and as, concededly, assuming they were guilty of negligence, their negligence caused the payment of these various later checks; as, concededly, if they had notified the bank that forgery was going on, the opportunity for forgery would have ceased; as concededly, therefore, the bank was damaged by their negligence in as far as it paid these later checks, and to the amount of these later checks there can be no recovery here on the part of the plaintiff, notwithstanding that these checks were forged, unless the defendant itself was guilty of contributory negligence."

No question of the contributory negligence of the defendant after September 10th was submitted to the jury, except as to the transaction of January 9th, already discussed. I think the court was correct in this instruction to the jury.

From beginning to end, it seems to me, that the fault in this whole transaction lies at the door of the plaintiffs themselves. Hennessey was their agent. Kissell, the trustee, was an experienced business man,

familiar with the system of the defendant in dealing with its depositors. He knew that the items of the credits were not entered in the check book, but were returned on a separate slip of paper. During all this time he never saw or asked for any of these slips. The notation in the pass book that the checks were returned "per slip" was equivalent to itemizing them in the book itself, for the plaintiffs were aware of this course of dealing. He never compared the amount of money which the check book by computation would show in the bank to the credit of the estate with that stated in the pass book. A mere glance— the slightest inspection—would have disclosed the discrepancy. The list of checks which were issued during this time was not large. It required no great effort to make the examination, and yet these trustees, it seems to me, exhibited gross carelessness. If they were taking charge of this large trust fund with any degree of diligence we would expect them to call for the check list, look over the pass book, putting forth some effort to verify the correctness of the account. They knew that the defendant had furnished ample evidence to discover any forgery, and they did not avail themselves of it. I think the plaintiffs were guilty of gross negligence.

The learned counsel for the plaintiffs relies upon the case of Critten v. Chemical Nat. Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529, the facts of which are materially different from those of the present case. The court, however, in that case, after an elaborate discussion of the authorities, stated that it was the duty of a depositor to exercise reasonable care in verifying the vouchers returned to him by the bank. The court say at page 227 of 171 N. Y., page 972 of 63 N. E. (57 L. R. A. 529):

"The practice of taking checks from check books and entering on the stubs left in the book the date, amount, and name of the payee of the check issued has become general, not only with large commercial houses, but with almost all classes of depositors in banks. The skill of the criminal has kept pace with the advance in honest arts, and a forgery may be made so skillfully as to deceive not only the bank but the drawer of the check as to the genuineness of his own signature. But when a depositor has in his possession a record of the checks he has given, with dates, payees, and amounts, a comparison of the returned checks with that record will necessarily expose forgeries or alterations. * * * Considering that the only certain test of the genuineness of the paid check may be the record made by the depositor of the checks he has issued, it is not too much, in justice and fairness to the bank, to require him, when he has such a record, to exercise reasonable care to verify the vouchers by that record. * * * If the depositor has by his negligence in failing to detect forgeries in his checks and give notice thereof caused loss to his bank, either by enabling the forger to repeat his fraud or by depriving the bank of an opportunity to obtain restitution, he should be responsible for the damage caused by his default, but beyond this his liability should not extend."

Of like import are Leather Manf's Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; and Myers v. Southwestern Nat. Bank, 193 Pa. 1, 44 Atl. 280, 74 Am. St. Rep. 672.

The amount which the jury were allowed to find against the defendant dependent upon its alleged contributory negligence in the transaction of January 9th, and including the subsequent forged checks, which

it charged to the account of the plaintiff, was $19,534, and that sum should be deducted from the judgment.

The judgment should be reversed, and a new trial ordered, with costs to the defendant to abide the event, unless the plaintiffs stipulate to reduce the verdict as of the date of recovery of $3,553.33, with interest thereon from July 17, 1905; in which event the judgment as modified should be affirmed, without costs of this appeal to either party. So ordered. All concur, except McLENNAN, P. J., and ROBSON, J., who dissent, in an opinion by the latter.

ROBSON, J. (dissenting). Defendant, a trust company, carried on as a part of its business that of a bank of deposit and discount. Plaintiffs are the trustees of a large estate, and opened an account with defendant in March, 1903. This was apparently an active account from its inception. Large deposits were made from time to time; and commensurately large amounts were withdrawn as the varying needs of the business of the estate required. The trustees had a trusted employé, Hennessey by name, who, as part of his duties, had charge as bookkeeper of the trustees' estate accounts, and apparently almost exclusive charge of the bank account with defendant, having custody of the pass book issued by defendant to plaintiffs, which he invariably, during the period in question in this action, personally presented to defendant when it was written up, and it was again returned to his hands with the vouchers, or canceled checks, when it had been balanced. Checks upon this account could be drawn by either trustee, but only on the personal signature of one or the other of them. Each check so drawn was numbered, the numbers being consecutive; and each check was properly entered on the corresponding stub in the check book used by the trustees. All checks actually drawn by either trustee between March 15, 1904, and July 17, 1905, were produced at the trial, and the several amounts of such checks agree with those appearing on the corresponding stubs in the check book. After crediting defendant with all the money so drawn by check of either trustee, a balance remained of $52,043.73, of which defendant refused to pay $34,671.84, claiming credit for 28 checks, which Hennessey, the bookkeeper, had forged and uttered between May 18, 1904, and June 22, 1905. During this period Kissell, one of the trustees, seems to have had practically the entire charge of this trust account, as his co-trustee was, during that time, absent in Europe, except for about 30 days. All the checks forged by Hennessey apparently bore the name of the trustee Morgan. The first of these forged checks was for $400, and appears on the books of the bank as paid May 18, 1904. The pass book had last, prior to that date, been balanced March 15, 1904. It was next balanced August 11, 1904. Before the pass book was returned to plaintiffs after it had been so balanced defendant had cashed, including the first forged check, already referred to, four of Hennessey's forged checks, aggregating $3,073.33. Defendant concedes its liability to plaintiffs for this sum. Eight days after the pass book was balanced and re-

turned defendant cashed another of Hennessey's forged checks for $480. The next forgery was September 10, 1904. Thereafter, at varying intervals, Hennessey continued to utter and obtain payment on similar forged checks till May 20, 1905, which is the last date of such a check preceding the discovery by plaintiffs of the forgeries. Plaintiffs' pass book was balanced during this time October 20, 1904, January 6, 1905, and April 26, 1905, and again June 26, 1905. When the pass book was balanced the checks were not entered separately in the book itself, but were entered as the total amount they aggregated with the added statement "Less cks. returned per list," and a list of all checks charged to the account accompanied the vouchers, returned with the pass book, each time it was balanced. The check list and the returned vouchers of course included the forged checks, but, as they invariably were delivered to Hennessey, he removed the forged checks from the parcel of vouchers returned, and destroyed them with the check list on each occasion when the book was balanced during the period over which his forgeries extended, so that neither the forged checks, nor the check lists, actually came to the possession, or knowledge of plaintiffs. It is also true that plaintiffs never actually compared the amounts of balances of their account with defendant, as shown by the pass book, with their own books of account of the estate funds to see if they agreed. The acting trustee did, however, each time the pass book was balanced and the vouchers returned, compare the vouchers, which Hennessey delivered to him, with the check stubs, and, of course, found that they agreed exactly. Hennessey, as bookkeeper of the estate account, kept it so that it showed exactly the condition it should have been in, even going so far as in each instance to credit to the estate items of interest on the total balance there should have been on deposit with defendant to the credit of the estate. The comparison of the returned canceled checks, which came to the hands of the acting trustee, with the stubs in the check book, of course, did not inform him in any way that the forged checks had been charged by defendant to the trust account. The court charged the jury in effect that the examination and comparison of the returned checks, which the trustee made, was not in law the performance of the duty to make reasonable examination of the estate's account with defendant when the pass book, balanced, together with the accompanying vouchers and check lists, was returned by defendant. The court further held that this duty of inspection and comparison must be exercised within a reasonable time; and on this point submitted to the jury, as a question of fact, whether the eight days which elapsed between the return by defendant of the vouchers, which included the first forged checks, and the presentation of the next succeeding forged check, was a reasonable time within which plaintiff should have made the required examination, discovered that the accounts had been depleted by the forged checks, and notified defendant of the fact. On this point I think there can be no doubt but that defendant had at least all the advantage in the charge that it was entitled to. As to the

forged checks presented after that date the court held, as matter of law, that a reasonable time to make what it held to be a reasonable examination of the account and vouchers, had elapsed; and that plaintiffs were, therefore, precluded from recovering the amount of the forged checks paid thereafter because, except for plaintiffs' negligence, the prior forgeries would have been discovered, and the success of the subsequent ones necessarily forestalled and prevented.

It is unnecessary now to determine whether the court was correct in so holding, in view of the statement made by plaintiffs' attorney that their appeal, which brings up this question only, would not be pressed provided the judgment, as it now stands, should be affirmed by this court. This view of the law when applied to this case would therefore dispose of all question as to defendant's liability to answer for moneys paid on forged checks after that immediately following first balancing of the pass books and return of vouchers, except for the occurrence of other and subsequent facts, which the court held was sufficient to call for the submission to the jury of the question whether the defendant had not been guilty of contributory negligence on its part, which made the continued successful perpetration of these forgeries possible. If the success of these forgeries was due to the negligence of plaintiffs, then, of course, plaintiffs, and not the defendant, must bear the loss thus occasioned. But if the loss, or some part thereof, was also due, or would not have occurred but for the negligence of defendant, which contributed to the successful perpetration of the forgeries, and the consequent loss thereby, then, following the well-recognized principles applicable to negligence cases, the defendant cannot escape its primary liability as plaintiffs' debtor on the plea that the loss was occasioned by the latter's negligence. Critten v. Chemical Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529.

The determination of the question of defendant's contributory negligence was submitted by the trial court to the jury only so far as it might be found by them to affect the payment of the forged checks presented after January, 1905. The facts disclosed by the evidence, which were submitted for the consideration of the jury, as bearing upon the solution of this question, were as follows: On January 5, 1905, the acting trustee, for the purpose of transferring to the credit of the trust fund in a New Jersey bank practically the whole balance, which he then supposed stood to the credit of the estate with defendant, drew his check for $14,000, and delivered it to Hennessey to deposit for the purpose of the transfer. At that time the actual balance to the credit of the estate as it appeared on defendant's books was less than $1,000, the difference being, of course, represented by the amounts previously paid by defendant on Hennessey's forged checks. Hennessey did not deposit this check on the 5th as directed, but on being asked by the acting trustee if he had done so, did actually deposit it on the 6th. This delay was at Hennessey's instance only, and apparently for the purpose of delaying the actual presentation of the check to defendant; it being

apparent that, if presented while the account with defendant was in its condition at that time, the large overdraft would be immediately reported to the acting trustee, and his forgeries would, as a necessary result, be disclosed. In the usual course of business this check was returned to the New York clearing house on Saturday the 7th, and would reach defendant early Monday morning. Anxious to forestall immediate action by defendant when this overdraft should in fact be discovered, Hennessey visited defendant's banking office twice Monday forenoon, and stated to the teller that he was worried about a probable overdraft on this estate account, but that it would be made good at once. This was personal notice that an overdraft had occurred, of which the defendant necessarily was also further informed both as to its time and extent by its own books of account. So large an overdraft, having its inception in the check of the 5th of January, though not presented for payment, following the regular course of business, till the 9th, was so serious an irregularity in the ordinary course of banking business, that it would seem, in and of itself, to have been sufficient to have suggested some inquiry by the bank as to its occasion, especially as it was known that this was a trust account, and, for that reason, upon a somewhat different basis from that of the ordinary commercial account. But there appears a further fact in connection with this overdraft, which still more clearly called for some active examination as to what it meant. The acting trustee just at this time determined to transfer from another bank, in which funds of the estate were deposited, the sum of $14,219.85 and deposit it with defendant. The check to defendant's order for this amount was on January 9th duly drawn, but was dated January 10th, and delivered to Hennessey to be deposited on the 10th. If deposited on the 10th, the overdraft would not be covered till too late, so Hennessey changed the date of this check from the 10th to the 9th, the erasure and change of the "0" of the "10" to a "9" being clearly visible on even a casual inspection. He then took the check, thus altered, to defendant, and deposited it on the earlier date. Whatever may have been the legal duty of defendant as to examination of this check, and whether there would be any liability to the drawer thereof, if accepted in its altered form, is here of no consequence. The plain alteration of the check, in and of itself a forgery, when made without authority of the drawer, was a material and important circumstance bearing upon the negligence of defendant at this juncture, especially as the large overdraft existing against this account was to be made good only by the deposit of this manifestly questionable check. The court had held that the fact that the forged checks differed from the genuine ones in that they were not numbered and were on different colored paper was not, standing alone, sufficient evidence of defendant's contributory negligence to warrant a submission of that question to the jury. But in submitting that question to the jury as to the time at and following the overdraft the jury was properly instructed that those circumstances might be considered in arriving at their conclusion. The four facts

submitted to the jury by the court, as those from which they were
to determine whether, or not, defendant had been guilty of contrib-
utory negligence, were, therefore, the overdraft, the altered check
by which the overdraft was apparently met, that the forged checks
were not numbered, and the different color of the forged checks.
To those circumstances, it seems, there might have been added the
fact that by agreement between plaintiffs and defendant in con-
sideration of the large balances, which the plaintiffs would main-
tain with defendant, the rate of interest allowed thereon was in-
creased from 2 per cent. to 3 per cent.; and though this balance
had solely by reason of the payment of the forged checks been re-
duced for a considerable period prior to the overdraft to a compar-
atively small sum, followed by the overdraft itself, defendant made
no examination as to the occasion, and gave plaintiffs no notice
thereof.

The jury was warranted beyond question, as it seems to me,
in finding, as it has, that the contributory negligence of de-
fendant was established. This would be true, even if the burden
of proof were on the plaintiffs to establish such negligence. How-
ever, I do not believe that the burden of establishing that fact
rested on them, but that it did rest, as in all cases within that class,
on the party to whom it may be charged.

The charge of the court was a careful and accurate presentation
of the case to the jury, so far, at least, as the questions on this ap-
peal are concerned, and the verdict is fully sustained by the evi-
dence.

The judgment and orders appealed from should be affirmed, with-
out costs of this appeal to either party.

McLENNAN, P. J., concurs.