NEW YORK PRODUCE EXCHANGE BANK v. HOUSTON et al.

(Circuit Court of Appeals, Second Circuit.   April 14, 1909.)

No. 214.

1. BANKS AND BANKING (§ 148*)—PAYMENT OF FORGED CHECKS—NEGLIGENCE OF BANK—ESTOPPEL OF DEPOSITOR.

Failure of a bank depositor to examine his account and give the bank prompt notice of his objections to the payment of forged checks is no defense to the depositor's right to recover the money so paid from the

bank, if the bank's officers, before paying the checks, by the exercise of reasonable care could have detected the forgeries.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–452; Dec. Dig. § 148.*]

2. **BANKS AND BANKING (§ 148*)—FORGED CHECKS—PAYMENT—RIGHTS OF DE-POSITOR—ESTOPPEL.**

Where a bank was negligent in paying certain forged checks, the depositor would not be estopped by his own negligence from claiming the amount so paid, unless such negligence was directly connected with the forgeries.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 442–444; Dec. Dig. § 148.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

John A. & A. S. Mapes (J. E. Kelly, of counsel), for plaintiff in error.

J. Parker Kirlin and Charles R. Hickox, for defendants in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The plaintiffs, who had the usual drawing account with the defendant bank, brought suit to recover the sum of $13,702, alleged to be the balance due when the account was closed. The bank defended on the ground that it had paid out on the plaintiffs' account three checks which represented this amount, viz., August 3, 1905, for $4,102, August 9, 1905, for $4,726.12, and August 29, 1905, for $4,873.88. The plaintiffs are an English firm, and the signature given the bank for drawing checks on their account was a rubber stamp, "p. p. R. P. Houston Company," with the name of H. C. Rowlands, their representative, written below. Rowlands' signature to the checks in question was forged by the firm's cashier. By agreement with the bank the plaintiffs' bank book was settled monthly; the bank returning the checks paid and a certificate of the balance on hand. The plaintiffs did not discover the discrepancy until Tuesday, September 5th, the 4th being Labor Day and the 3d Sunday. An examination of their books then showed that on July 25th the cashier had failed to make a deposit entered on the stub of the check book of $1,348.31; that without the knowledge of the plaintiffs he had the bank book settled out of the usual course August 11th; that on August 29th he kept a check for $8,473.87 to the order of Brown Bros., instead of having it certified by the bank and delivered; and, finally, that on August 31st, the plaintiffs' representative having signed a check with the figures "$261.50" in the lower left-hand corner, the line for the written figures being blank, the cashier inserted the figure "3" before the figures "261.50," and filled up the blank with the words "three thousand two hundred and sixty-one and 50/100ths dollars." This was the only occasion on which the plaintiffs' representative ever signed a blank check, and he did it because the check was presented to him when he was hurrying to a committee meeting, for which he was late.

The plaintiffs made no claim either for the deposit of $1,348.31 not made July 25th, or for the sum of $3,000, the amount by which the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

check of August 31st was raised. The cashier destroyed the forged checks when they were returned by the bank, so that the only evidence about these signatures on the trial was a statement in an affidavit made by him that he made the signatures as like the genuine as possible. The defendant offered no testimony. The court was clearly right in refusing to direct a verdict for the defendant, and, as we have no power to review his refusal to set aside the verdict as against the evidence, the exceptions on these grounds are without merit.

The only other exceptions relied on were taken to the court's answers to the jury when they returned for further instructions:

"Juror No. 7: Your honor, we want to find out whether we can bring in a verdict that we find both sides guilty of negligence.

"The Foreman: If we have a right to compromise. If we have a right to give the plaintiff one check—one forged check.

"The Court: Well, if you all agree that there was fault on the part of the defendant in cashing these forged checks, then (if you understood the charge correctly) any want of care on the part of the plaintiff to affect it at all must have reference to the act of forgery or payment of the checks, not reference to some other thing collateral to it. It must bear right on that matter. If you find that the bank officers were guilty of want of care in the matter that the law imposes upon them, you are not to consider the transaction relative to the thirteen hundred and some odd dollars, if you find that the bank officers were lacking in care, because that would be remote—collateral. The only want of care on the part of the plaintiff that you can take into consideration at all, if the bank officers were wanting in care, would be something that goes right to the matter of forgery, and in discussing that you want to inquire what that act was, if you find any. It is for you to say whether there was any that related to that specific thing.

"The Foreman: Supposing some of the jurors consider the bank more negligent in the first case, paying the first check, than in the others following, would we have a right to bring in a verdict for one or two—or about that amount?

"The Court: In order to find that way, you must find from the evidence that there was a difference in care on the part of the bank officers. Was there any difference in care on the part of the bank officers? Was there any difference in the want of care by the bank officers as to the first or the second or the third check? Whether they did not stand exactly alike as to their care as to each check? Was there a want of care as to all of the checks? Did the plaintiff do anything at all whereby he is estopped of a right to recover of the bank specifically as to one check or any of them?

"Juror No. 7: We seem to all stand that we think that both sides are guilty of negligence, both in fault.

"The Court: Do you find the plaintiff guilty of want of care as to these checks?

"Mr. Kelly: I must object to that.

"The Court: I am not asking you to answer that question to me, but to yourselves. What is the plaintiff guilty of with reference to the forgery? Their want of care must relate to that act, or did the plaintiff do something that misled the bank in that matter?"

The federal law is settled for this court in the case of Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811. It was a case of raised checks having genuine signatures, and went up from this circuit. The trial judge directed a verdict for the plaintiffs, which was reversed on the ground that the case should have gone to the jury. It was held that the sending of his bank book for settlement is a demand by the depositor to know what his balance is; that it is his duty to examine it, and the vouchers returned, or to have them

examined, within a reasonable time, and to make any objections he has. If his failure in this respect deprives the bank of an opportunity to take steps for its own protection, which it would have taken had such notice been given, the depositor may be estopped from questioning the conclusiveness of the settlement. This proposition, however, was made to depend upon the assumption that the bank had been guilty of no negligence. Mr. Justice Harlan said, at page 112 of 117 U. S., and page 663 of 6 Sup. Ct. (29 L. Ed. 811):

"Of course, if the defendant's officers, before paying the altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account."

The case was so understood by the Circuit Court of Appeals for the Sixth Circuit in First National Bank v. Fourth National Bank, 56 Fed. 967, 971, 6 C. C. A. 183, 188; Judge Sage saying:

"However, counsel for plaintiff did not cite that case for the application above named, but to call attention to the fact that the Supreme Court decided, first, that if the bank had been guilty of negligence it would have been liable, notwithstanding the depositor's failure to examine the pass books and vouchers; and, second, that as the depositor's clerk had no power to bind him by raising the checks he had no power to charge him with the imputed knowledge of the fact that they had been raised. The court did hold that, if the officers of the bank could by proper care and skill have detected the forgeries before paying the raised checks, the bank would be the loser, even if the depositor made no examination of his account. Certainly, because in that state of fact the negligence of the bank's officers would have been the proximate cause of the loss."

We think the instructions of the trial judge were all that the defendant was entitled to. If the bank were negligent, the plaintiffs would be estopped from claiming against it only by their own negligence directly connected with the forgeries. The bank was bound to know its depositors' signature, and was under a duty not to pay out their money on some other signature. No doubt, if the plaintiffs had discovered the cashier's misappropriation of the deposit of $1,348.31 July 25th, when their book was settled August 1st, the subsequent thefts would have been prevented; but this in no way excused the bank for lack of care in paying out this money on a forged signature. In the same way, if the plaintiffs had discovered the payment of the forged checks of August 3d and 9th, when their bank book was settled out of the usual course August 11th, the check of August 29th would never have been forged. But these considerations were only relevant in case the bank had been guilty of no negligence; and, the jury having found for the plaintiffs for the full amount claimed, we must presume that they did find the bank negligent, or, if not, that the plaintiffs' conduct was not such as to estop them from making claim. The law as to the two alternatives was fully explained in the charge.

The judgment is affirmed, with costs.