HAMMERSCHLAG MFG. CO., Inc., v. IMPORTERS' & TRADERS' NAT. BANK.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 46.

1. BANKS AND BANKING ⬅➣148(3)—DUTY OF DEPOSITOR TO VERIFY BANK STATE-MENT.

A depositor, who sends his passbook to be written up and receives it back with his paid checks as vouchers, is under obligation to the bank to examine and verify the passbook and vouchers, and to report to the bank any errors disclosed.

2. BANKS AND BANKING ⬅➣148(1)—NO LIABILITY FOR PAYMENT OF RAISED CHECKS, WHERE ALTERATIONS NOT DISCOVERABLE BY REASONABLE CARE AND DEPOSITOR LATE IN MAKING CLAIM.

A bank expressly authorized in writing to pay checks to a depositor's bookkeeper, and which so paid checks duly signed by the depositor, but which, after signing, had been raised by the bookkeeper, held not liable for the overpayments, where the checks were entirely written by the bookkeeper, and the alterations were not discoverable by reasonable care, and where depositor's passbook was written up and returned with canceled checks each month, and no claim was made by depositor until more than a year after the raising of the checks commenced.

3. TRIAL ⬅➣141—DIRECTION OF VERDICT PROPER WHERE EVIDENCE IS UNDISPUTED.

A directed verdict is proper, where the evidence is undisputed and free from conflict.

4. BANKS AND BANKING ⬅➣148(4)—LIABILITY FOR PAYMENT OF RAISED CHECKS AFFECTED BY LACHES OF DEPOSITOR IN NOTIFYING.

Where a depositor's passbook was written up and returned with canceled checks each month, with a notice stamped thereon requesting its examination, and stating that the bank disclaimed responsibility for any error unless notified within 30 days, the bank held not liable for payment of raised checks, which it could not have discovered by reasonable care, and of which it was not notified for nine months.

Manton, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Hammerschlag Manufacturing Company, Incorporated, against the Importers' & Traders' National Bank. Judgment for defendant, and plaintiff brings error. Affirmed.

The plaintiff is a corporation organized and existing under the laws of the state of New Jersey and has its principal office in the town of Garfield, in that state. The defendant is organized and existing under the laws of the United States, and is a resident and citizen of the state of New York, and has its principal office and place of business in the Southern district of New York. At the times hereinafter mentioned the plaintiff was a depositor in the bank owned and conducted by defendant.

The plaintiff, between August 1, 1913, and October 21, 1914, inclusive, deposited with defendant $659,815.40; and on August 1, 1913, the defendant was indebted to plaintiff in the sum of $21,036.84 upon an account for money deposited with it. Between the dates mentioned the defendant paid to the plaintiff upon its order the amount of $675,702.24. The plaintiff demands in this action the difference between the amounts which defendant received and the amounts paid out to it or on its order, to wit, the sum of $5,150. It appears that checks payable to "Bearer a/c Exchange" were presented to defendant by the plaintiff's accredited representative and were paid by it, which

had been raised by the said accredited representative. It also appears that the increase to which these checks had been raised equaled the balance for which the plaintiff sues.

At the conclusion of the plaintiff's case defendant moved to dismiss the complaint and for the direction of a verdict, upon the ground that plaintiff failed to show liability on the part of the defendant bank, and that from plaintiff's own evidence it appeared the defendant bank was free from any liability or fault respecting the raised checks. The motions were granted and a verdict was returned under the court's instructions in favor of defendant.

Louis S. Posner, of New York City, for plaintiff in error.

Henry W. Baird, of New York City, for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question which this case presents relates to the right of a bank which has paid raised checks to escape liability for repayment of the amounts so paid by establishing the negligence of the depositor in not examining the passbook and vouchers returned to him by the bank, and in not reporting to the bank without unreasonable delay the errors discovered or which might have been discovered.

In the present case there was no forgery of signatures. It is admitted that the signatures were all genuine. The forgeries consisted in raising the amounts for which the checks were originally drawn, and the alterations were all made by the plaintiff's confidential bookkeeper. He had exclusive charge of the preparation of the checks for signatures, and exclusive charge of the presentation of the checks for signatures. After the signatures were affixed, the bookkeeper would raise the amount of the check and present it to the bank for payment. The alteration of checks by him began in August, 1913, and in June of that year the plaintiff had written the following letter and given it to the bookkeeper, William H. Hooper, who presented it to the paying teller of the bank:

"New York, June 6, 1913.

"Importers' & Traders' National Bank, Broadway and Murray Street, City— Gentlemen: Please accept this letter as authority for payment to our Mr. W. H. Hooper of checks presented by him, drawn to the order of bearer—signature below.

"Respectfully yours,    [Signed]  Hammerschlag Mfg. Co.,
"J. D. Goldberg, Vice President.

"Dic. J. D. G/K.

"[Signed]  William H. Hooper."

Each one of the altered checks was altered by Hooper, presented by him, and to him the money on all of them was paid. The amount of the check as originally drawn was erased by an ink eradicator preparation, and as the raised amount was in the handwriting of the one party who wrote the original check there was nothing in the appearance of the check to challenge attention. The protectograph was not used, with a possible exception of one or two of the checks, until after the alteration in amount was made. No book containing checks and stubs was used. The checks were drawn on voucher forms, which were padded, and the amounts were entered in the book as the book of original entry.

[1] A depositor who sends his passbook to be written up, and receives it back with his paid checks as vouchers, is under an obligation to the bank to examine and verify his passbook and vouchers, and report to the bank the errors disclosed.

In Weisser's Administrators v. Denison, 10 N. Y. 68, 61 Am. Dec. 731 (1854), the court declared that a depositor owes the bank no duty which requires him to examine his passbook or vouchers with a view to the detection of forgeries. It also declared that where checks forged by the confidential clerk of the depositor were paid by the bank, charged to the depositor in his bank book, the book balanced and with the forged vouchers, among others, returned to the clerk, who examined them and reported them correct, and the principal did not discover the forgeries until months afterwards, when he immediately informed the bank, the bank could not retain the amount of the forged checks. The more recent authorities in New York, soon to be considered, lay down a quite different doctrine.

In Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811 (1886), the rule is laid down that the depositor is bound personally or by an authorized agent and with due diligence to examine the passbook and vouchers, and to report to the bank without unreasonable delay any errors that may be discovered; and if he fails to do so, and the bank is misled to its prejudice, he cannot afterwards dispute the correctness of the balance shown by the passbook. It is also held that, if the duty of examination is delegated by the depositor to the clerk guilty of the forgeries, he does not so discharge his duty to the bank as to relieve himself from loss.

In Critten v. Chemical National Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529 (1902), the rule is laid down that a bank depositor owes to the bank the duty of exercising reasonable care to verify returned vouchers by the record kept by him of the checks he has issued, for the purpose of detecting forgeries or alterations; and in that case the court held a bank depositor chargeable with the knowledge of the fraudulent alteration of checks possessed by his clerk to whom he intrusted the examination of the vouchers, and with his negligence or failure in the verification of the accounts, although the clerk happened to be the one who made the alterations, where the comparison of the checks with the stubs in the check book would have disclosed such alterations to an innocent party previously unaware of the forgeries.

In Morgan v. United States Mortgage & Trust Co., 208 N. Y. 218, 101 N. E. 871, L. R. A. 1915D, 741, Ann. Cas. 1914D, 462 (1913), a trusted clerk in the employ of the trustees of an estate, and who was their immediate agent in dealing with the bank, forged 28 checks, aggregating a large sum, which the bank paid. Checks drawn on the account of the estate were signed by a rubber stamp imprinting the words "estate of David P. Morgan," and were authenticated by the actual signature of one of the trustees. The clerk who made the deposits filled out the body of the checks, obtained from the bank the passbook and vouchers and check list whenever the account was

balanced, and employed in his forgeries the simulated signature of the trustee Morgan. An action was brought to recover the amount paid by the bank on the forged checks. The court held that there could be no recovery; the rule being that a bank is permitted to escape liability for repayment of amounts paid out on forged checks, if it establishes that the depositor has been guilty of negligence which contributed to such payments and that it has been free from any negligence. The negligence which the bank relied upon was the negligence of the trustees in not examining their passbook and list of vouchers, and thus discovering within a reasonable time what they were being charged with. The depositors were in the habit of making an examination, but the examination was incomplete and ineffective. The court declared that if they had examined the check list and passbook, and compared them with their own books, they would have discovered at once the payment and debit to their account of checks which they had not drawn, and the forgeries would have been uncovered. The trustees had relied for verification merely on a comparison of vouchers, without any effort to verify them by comparison with the check list or passbook.

In Myers v. Southwestern National Bank, 193 Pa. 1, 44 Atl. 280, 74 Am. St. Rep. 672 (1899), the court recognized the duty of the depositor to verify the settlements of his bank book, and held that he could not recover from the bank the loss which he sustained by not doing so. In that case the depositor intrusted to the confidential clerk, who committed the forgeries, the duty of verifying the passbook, and the court held the depositor clearly responsible for the acts and omissions of his clerk in the course of the duties with which he was intrusted.

So in First National Bank of Birmingham v. Allen, 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80 (1893), it is held to be the duty of the depositor, who has his passbook written up by the bank and receives it back with his paid checks as vouchers, to examine the passbook and vouchers either personally or by an authorized agent, and report to the bank without unreasonable delay any errors that may be discovered in them. The court also held that, if the depositor has the examination made by an agent who happens to have been the one guilty of the forgeries, the depositor will be chargeable with the knowledge of the agent. And see Dana v. National Bank, 132 Mass. 156; De Fariet v. Bank of America, 23 La. Ann. 310, 8 Am. Rep. 597.

[2] In the instant case the bank deposit book was balanced each month. After it was balanced it was returned with the vouchers and the check list; and on each occasion when the passbook was returned there was stamped in red ink on it the following notice:

"The bank requests and expects that the dealers will carefully examine their passbooks and vouchers each time when returned to them, and that they will at once notify the bank of any error in the account or balances, and especially to any objection on their part, for any reason, to any voucher returned being charged against them. The bank disclaims responsibility for any error in the accounts as rendered, unless informed of it within 30 days after the return by it of the passbook and the surrender of the vouchers."

No one in the plaintiff's company examined the returned checks, but the bookkeeper who forged them. This appears from the following excerpt from his testimony:

"Q. But, I mean, was there anybody in the business that went over these returned checks? A. Myself.

"Q. That checking up, as it were, of the checks returned from the bank, was done by you? A. Yes, sir.

"Q. And by no one else in the concern? A. Not in the company.

"Q. Is that correct? A. Yes, sir. * * *

"Q. So that, at the expense of repetition, I will ask you whether I am correct in understanding that the sole examination made of the passbook and the returned checks during this period, outside of whatever the outside accountant did, was made by you? A. Yes, sir."

The outside accountant, as the record shows, made a monthly examination. He checked up the vouchers returned by the bank, and checked them up against the bank list. Then he took the checks and checked them up against the general exhibit, which contained a record of the number of the check, the date, the payee, and the amount, and compared the amount with the entry in the general exhibit. He took the deposits as listed by the bank, and compared them with the deposits listed in the general exhibit; and he took the balance as shown in the general exhibit and the outstanding checks that did not come through, and found there was an agreement with the balance as shown by the bank. Although he knew there was a daily cash receipts book, he admitted that he did not look at it; and he admitted that, if he had compared it with the general exhibit book, the discrepancies would have been immediately disclosed. He was asked by the court whether there would have been any trouble about it, and answered:

"No; it would be very plain and obvious that there was a defalcation or embezzlement."

Inasmuch as the examination which it was the duty of the plaintiff to make involved, not simply the authenticity of the signatures to checks, but the amount of the checks, as to whether they had been raised or not, that duty could not be performed with ordinary care by looking at the entries in a secondary book and leaving unopened the book of original entries. Such a method of examination left the door wide open for such forgeries as was practiced in this case, and the negligence of the accountant is clearly attributable to the plaintiff; the law being that, when a duty is cast upon any person, that person may not absolve himself of his duty by delegating the duty to some other person to perform. In this case the duty clearly was not adequately performed. When the plaintiff sent its passbook to defendant to be balanced, it in effect demanded to be informed as to the condition of its account, and, when the balanced passbook and the vouchers were returned, the silence of the plaintiff respecting the returned vouchers and the entries in the passbook amounted to an admission on its part as to their correctness.

The rigid responsibility imposed on banks must be maintained. It is equally important, however, that depositors who make negligent examinations of the accounts rendered to them by their banks should

themselves sustain the losses which result from their own and not the bank's carelessness, and which would have been prevented if they themselves had exercised reasonable care. The plaintiff seeks in this case to hold the bank responsible for the payment of checks raised by its own employé, who was authorized by it to prepare the checks and to obtain the money on them, and over whose conduct no reasonable supervision was exercised.

The failure, however, of a bank depositor adequately to examine his passbook and vouchers, and to give the bank prompt notice of any errors he may discover, is no defense to the depositor's right to recover the money so paid from the bank, if the bank's officers, before paying the checks. could have detected the forgeries, if they had exercised reasonable care. This principle was declared by the Supreme Court in Leather Manufacturers' Bank v. Morgan, supra, where it was said:

"Of course, if the defendant's officers, before paying the altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account."

And this court so understood the decision and applied it in New York Produce Exchange Bank v. Houston, 169 Fed. 785, 95 C. C. A. 251 (1909), as did the Circuit Court of Appeals in the Sixth Circuit in First National Bank v. Fourth National Bank, 56 Fed. 967, 971, 6 C. C. A. 183 (1893). This being the law, we are brought to inquire whether in the instant case the defendant bank, if it had exercised reasonable care in examining the checks, could have detected the forgeries. If in the exercise of such care it might have detected them, it must answer to the plaintiff for its failure to do so. The proof is that the alterations in the checks were so cleverly done that even the man who made them could not himself detect them. The court asked him whether it was fair to say that the alterations were so successfully accomplished that he who made them was unable to determine them by examining the checks. The reply was, "I believe invariably so." Then the court again asked, "You believe it [detection] could not be made?" And the witness answered, "Yes, sir." Then followed this:

"The Court: In other words, what you mean to say is that so far as you, the author of this change, was concerned, the change was so completely effective that even you could not see that there was a change; is that true?
"The Witness: Yes, sir."

In making the alterations the same ink was employed that was used in writing the original amounts. At the time of the trial there were two or three checks in which there was shown to be a difference in the appearance of the ink. The appearance of ink changes in time, and there is absolutely no evidence whatever as to the condition of the ink on the checks at the time they were presented to the bank, or that there was anything about them to put the bank upon inquiry. In the case of one or two of the checks, it was possible that the protectograph mark had been changed. The practice was to have checks signed first, then altered, and then protectographed. Asked as to the

check upon which possibly the protectograph mark was changed, the witness answered:

"I would say that the check appears to have been changed; but it would be a very difficult problem to determine that it has really been changed."

And the following excerpt from the testimony of the accountant employed by the plaintiff to make the audits is important upon this phase of the subject:

"Q. Was there anything in the course of your work that directed your attention as queer about any of those checks? A. No.

"Q. You thought they were all right? A. Certainly."

In view of the testimony as to the appearance of the checks which had been altered, and in view of the letter of June 6, 1913, written by defendant to the bank, and left with the paying teller, and which elsewhere appears, it is very evident that it is impossible to say that there was a lack of reasonable care in the failure of defendant to detect the alterations in the checks.

This brings us to inquire whether the question of the negligence of the defendant in paying the checks, or of the plaintiff in examining the passbook and vouchers, after their return by the bank, should have been submitted to the jury.

[3] It is the province of a jury to determine facts, and of a court to declare the law. But a judge may direct a verdict, where there is a failure of evidence, or where the evidence is contrary to all reasonable probabilities, or where it is uncontroverted; and a directed verdict is proper, when it is plain that a contrary verdict cannot be permitted to stand. The rule is stated correctly in 23 Am. & Eng. Encyc. of Law (2d Ed.) 551, where it is said that—

"When the facts are admitted, or are undisputed, or where the evidence is not conflicting, there is no question which need be submitted as a question of fact, and the court may withdraw the case from the jury and itself decide all questions which are involved as questions of law; e. g., the question of negligence is often a mixed question of law and fact, but when the direct fact or facts in issue are ascertained by undisputed evidence, and such fact or facts are decisive of the case, a question of law is raised and the court should decide it without submitting any question to the jury."

Again at page 558 it is said that—

"If the evidence is free from conflict, or the facts are undisputed, or conclusively proved, so that there is no reasonable chance for drawing different conclusions from them, the court may and must withdraw the whole case from the jury, or the particular fact or facts in issue as to which there is no conflict in the evidence."

These propositions are established by a long line of decisions, which are cited, and which need not be repeated here.

The evidence in the case at bar is undisputed and free from conflict. Counsel for plaintiff admits this in his brief where he says:

"We feel convinced, and respectfully urge upon this court, that no question of fact exists in this case with relation to complainant's conduct in the examination of the returned vouchers, and that from the uncontradicted testimony it must be held that it discharged its whole duty to the bank."

We agree that no question of fact arises, either as to the plaintiff's or the defendant's conduct. The testimony is uncontradicted alike as to the conduct of each. The defendant called no witnesses, and such evidence as is in the record comes from the plaintiff's own witnesses, and they stand uncontradicted. The facts being undisputed, there was no question of fact for the jury to determine.

This case is in principle not unlike Morgan v. United States Mortgage & Trust Co., supra. It was claimed in that case that the question of the negligence of the bank should have been submitted to the jury. But the court declared that, after an examination of all of the evidence, it was not thought that there was any which would have justified the jury in deciding that the respondent was negligent; and the court came to the same conclusion as respects the negligence of the depositors. After calling attention to what steps the depositors took, and failed to take, to verify the accounts rendered by the bank, Judge Hiscock, who wrote for the New York Court of Appeals, said:

"The only question is whether a jury would have been permitted to say that they were free from negligence, when they closed their eyes or turned them away from these certain means of detection of their own agent's wrongdoing, which were furnished to them for that very purpose by the bank. I do not think it would have been permitted to so determine."

And in Critton v. Chemical National Bank, supra, the Court of Appeals disposed of the question of negligence as a matter of law upon the undisputed evidence.

The plaintiff, however, notwithstanding the admission, already quoted, that there is no question of fact, still strongly relies upon Leather Manufacturers' Bank v. Morgan, supra, in which the Supreme Court held that the question of the depositor's negligence in examining his returned passbook and vouchers was a question for the jury; but that case seems to us distinguishable from the case at bar. The facts in the instant case are undisputed and beyond controversy, while in the Morgan Case they appear to have been otherwise. In the latter case the court in its opinion speaks of the evidence as—

"tending to show—we do not say beyond controversy—that Cooper failed to exercise that degree of care, which under all the circumstances, it was his duty to do."

And again the opinion says:

"There was also evidence tending to prove—we do not say conclusively—that the depositor gave practically no attention to the account rendered by the bank, except to that one rendered March 2, 1881"

—which led to the discovery of the forgeries. And then the court goes on to say that if the case had been submitted to the jury, and they had found such negligence upon the part of the depositor as precluded him from disputing the correctness of the account rendered, "the verdict could not have been set aside as wholly unsupported by the evidence." And again it says:

"As there is, under the evidence, fair ground for controversy as to whether the officers of the bank exercised due caution before paying the altered checks, and whether the depositor omitted, to the injury of the bank, to do what or-

dinary care and prudence required of him, it was not proper to withdraw the case from the jury."

Upon the undisputed evidence in the case at bar this court can see no ground for controversy. The bank as a matter of law, upon the undisputed facts, was not guilty of negligence, and the depositor was.

[4] In conclusion, we come to consider whether the plaintiff in error was entitled to a verdict upon the three forged checks, aggregating $400, paid prior to the first bank balancing. In New York it has been held that a bank is not relieved from liability for raised checks, which it had paid before the account was balanced, by the failure of the depositor subsequently to discover the alterations, unless thereby the bank has lost an opportunity to obtain restitution. Critton v. Chemical National Bank, supra; Weisser's Administrators v. Denison, supra.

It would seem sufficient to say that, whatever the rule may be under other circumstances, it certainly is inapplicable to the facts under consideration. The plaintiff must have known the rule of the bank, stamped upon its passbook each time it was balanced, in which it was stated that—

"The bank disclaims responsibility for any error in the accounts as rendered, unless informed of it within 30 days after the return by it of the passbook and the surrender of the vouchers."

In continuing to do business with the bank with knowledge of this rule, the plaintiff consented to be bound by it, and is estopped to claim that the bank is liable to it upon the three checks paid prior to the first balancing of the passbook. Those checks were paid in August, 1913, and the passbook was balanced at the end of that month. Notice of the forgeries was not given to the bank until May, 1914. Under the circumstances of this case, it is unnecessary to inquire whether the doctrine held in New York as to the right of the depositor to hold the bank for payments of forged checks paid prior to the first balancing of the passbook is or is not recognized in the federal courts.

Judgment affirmed.

MANTON, Circuit Judge (dissenting). The defendant in error had money of the plaintiff in error on deposit. It was subject to checking in withdrawals. The relation existing between the bank and depositor was that of debtor and creditor, and the bank can justify the payment on the depositor's account only on actual direction of the depositor. Critton v. Chemical Bank, 171 N. Y. 218, 63 N. E. 969, 57 L. R. A. 529. In the case under consideration, payment was made without actual direction of the depositor, because of forgeries. The bank can only escape liability by affirmatively establishing (1) negligence of the depositor directly relating to and facilitating the forgeries; (2) omission of the depositor to use ordinary care in the examination of return vouchers to the prejudice of the bank, thus estopping the depositor in making claim; and (3) by the bank establishing that it was guilty of no negligence in paying the forged checks. Leather Mfrs.' Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; N. Y.

Produce Exchange Bank v. Houston, 169 Fed. 785, 95 C. C. A. 251; Morgan v. U. S. Mortgage & Trust Co., 208 N. Y. 218, 101 N. E. 271, L. R. A. 1915D, 741, Ann. Cas. 1914D, 462.

Unless the case be a plain one, whether each or any of these defenses has been established was a question of fact for the jury, and not one of law for the court. When the fraudulent alteration of the checks was proved, the liability of the bank for the amount was made out, and it was incumbent upon the defendant in error to establish affirmatively negligence on the part of the plaintiff in error to relieve it from the consequences of its fault or misfortune in paying on forged orders. Critton v. Chemical Nat. Bank, 171 N. Y. 224, 63 N. E. 969, 57 L. R. A. 529.

The question of negligence cannot arise unless the depositor has, in drawing his check, left blanks unfilled, or by some affirmative act of negligence facilitated the commission of the fraud by those into whose hands checks may come. Crawford v. West Side Bank, 100 N. Y. 50, 2 N. E. 881, 53 Am. Rep. 152. While it is true that the drawer of a check may be liable when he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alterations, he is not bound, under the law, to so prepare the check that nobody else can successfully tamper with it. Belnap v. National Bank of Mass., 100 Mass. 380, 97 Am. Dec. 105.

Reading the prevailing opinion leads me to the conclusion that the court has decided the questions of fact which are presented by this evidence as questions of law, rather than permitting the submission of such questions of fact to the jury. The evidence is disputed, and the inferences to be drawn therefrom are in dispute. Reasonable minds might differ as to the conclusions to be drawn legitimately from such evidence, and such are typical questions for a jury's solution. The leading authorities, which are binding upon us, and which are considered in the prevailing opinion, illustrate the necessity for us to pronounce that a jury question is presented by the evidence here. The forgeries here were committed by an employé of the plaintiff in error who occupied the position of head bookkeeper and trusted executive. The forgeries in each instance consisted in the raising of the amounts of checks drawn by the plaintiff in error to "Bearer, Account Exchange," after the checks had been drawn and were completed and duly signed. The checks were prepared by Hooper in his own handwriting, and thereafter signed by an officer of the plaintiff in error, and were presented to the bank by Hooper. After the signature, he committed the alterations resulting in the forgeries. The alteration of the check was made by the use of Collins' ink eradicator. Some of the checks were stamped by a protectograph. In these instances, the stamp of the protectograph was obliterated by restamping. This alteration was plain and quite visible to the naked eye. This was also true of the change in the color of ink used.

The checks were drawn on voucher form and were numbered consecutively. It was not the practice of the officers of the company to examine the books; but this was left to its bookkeepers, including

Hooper. He devised a system of keeping the accounts in the books of the plaintiff in error which covered up his forgeries and thefts. At the end of each month the returned vouchers, with the bank's statement, were checked up and reconciled by Hooper, and also by an auditing accountant employed by the plaintiff in error. Because of this ingenious scheme of Hooper, they were found correct by the auditing accountant and were not detected. In issuing the checks to "Bearer, Account Exchange," a method was pursued by which the officers of the company reimbursed plaintiff in error for petty cash taken as needed in the management of the business. The plaintiff in error's method of bookkeeping and method of checking up the accounts cannot be said to be antiquated, much less a negligent method. Hooper was shrewd and clever enough to deceive his colaborers in the plaintiff in error's employ, including the auditing accountant. But there was sufficient indication to a prudent paying teller at a bank to put him on notice of the alterations made by the protectograph stamp, if, indeed, the alteration in the figures should not have been discovered. This is not the case as should be disposed of by the court as a question of law.

In Critten v. Chemical Nat. Bank, 171 N. Y. 224, 63 N. E. 971, 57 L. R. A. 529, Judge Cullen said:

"In the present case the fraudulent alteration of the checks was not merely in the perforation of the additional figure, but in the obliteration of the written name of the payee and the substitution therefor of the word 'Cash.' Against this latter change of the instrument the plaintiffs could not have been expected to guard, and without that alteration it would have no way profited the criminal to raise the amount. Apart, however, from that consideration, the question was clearly one of fact, to be determined largely by an inspection of the checks themselves."

The bank cannot be excused from its negligence upon the theory that there was neglect by the depositor in examining the returned vouchers. If the bank's officers, before paying the altered checks, could, by proper care and skill, have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account. Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811. This doctrine enunciated in Leather Manufacturers' Bank v. Morgan et al., supra, was accepted by this court in New York Exchange Bank v. Houston, 169 Fed. 785, 95 C. C. A. 251, and was so interpreted by the Sixth Circuit in the First National Bank v. Fourth National Bank, 56 Fed. 967, 6 C. C. A. 183. In the New York state court, the general rule is that a bank may pay and charge to its depositor only such sums as are duly authorized by the latter, and, of course, a forged check is not authority for such payment. The bank may escape liability for the repayment of amounts paid out on forged checks, by establishing that the depositor has been guilty of negligence which contributed to such payment and that it has been free from any negligence. Morgan v. U. S. Mortgage & Trust Co., 208 N. Y. 222, 101 N. E. 871, L. R. A. 1915D, 741, Ann. Cas. 1914D, 462. But as Judge Harlan said, in Leather Mfrs.' Bank v. Morgan, supra:

Where there is "fair ground for controversy as to whether the officers of the bank exercised due caution before paying the altered checks, * * * it was not proper to withdraw the question from the jury."

Of course, the depositor owed a duty of some examination and verification of its account with the bank when the passbook and vouchers were returned. In this they guarded against a continuation of subsequent forgeries and thefts; but such examination means the exercise of ordinary care, either personally or by some authorized agent. The bank cannot justly complain, after such examination, if forgeries were not discovered by such examiner until it was too late to retrieve. Leather Mfrs.' Bank v. Morgan, supra; Frank v. Chemical Nat. Bank, 84 N. Y. 209, 38 Am. Rep. 501.

When, having obtained from the bank a list of vouchers and balanced passbook, which were intended to give and did give them a correct basis for comparison and verification, the plaintiff in error, by its agents, made an examination and reconciled the accounts, the care with which such examination is made, and whether it was ordinary prudent vigilance, is a question for the jury. Morgan v. U. S. Mortgage & Trust Co., supra. The following language was quoted with approval in Leather Mfrs.' Bank v. Morgan, supra:

"The alleged duty, at most, only requires the depositor to use ordinary care; and if this is exercised, whether by himself or his agents, the bank cannot justly complain, although the forgeries are not discovered until it is too late to retrieve its position or make reclamation from the forger."

In National Bank v. Tacoma Mill Co., 182 Fed. 1, 104 C. C. A. 441 (C. C. A. 9th Dist.), there was an examination of the bank's balance. The deposit slips and checks upon such examination did not reveal the forgeries. Accounts were reconciled, as in the case at bar, and there the court approved a direction of the verdict fastening liability on the bank, saying:

"If those statements tally with the deposit slips made up by the depositor and the checks drawn against the bank, and if the balances agree one with the other, the depositor is not obliged to look further, nor to bear in mind some irregularity that may appear elsewhere in his general books, although a searching inquiry might lead to a discovery of the fraud. The present case is illustrative of the principle. The mill company was unable to ascertain what had happened, until it sent out to its customers for statements of their accounts and called in experts to determine the condition of its books. It was then discovered that the Mandan Mercantile Company credit was given on April 5th, which gave a clue to the line of inquiry, and led to a discovery of the fact that that item did not appear in the bank deposit, as it should have done; and it was found that, if the items in the mill company's cash account had been checked with the deposit account, it would have shown that this item had not been deposited, although it is probable the cash had been drawn from the bank, in this particular instance, and put in the cash drawer of the mill company. The inquiry which the defendant would have had the plaintiff pursue to discover the fraud is collateral to an examination of the passbook and the record of checks drawn against the bank account, and it does not seem to us that the plaintiff was guilty of such negligence in relation thereto as that the question should have been submitted to the jury."

In both the leading authorities considered and approved by the prevailing opinion (Leather Mfrs.' Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; Critten v. Chemical Bank, 171 N. Y. 219, 63

N. E. 969, 57 L. R. A. 529), the courts held the question of negligence of the bank and depositor in each case should be submitted to the jury. Even though the depositor in the present case could be said to be estopped because of negligent conduct or method of examination of the returned vouchers, this does not exempt the bank from liability for such forged checks as were paid before the depositor had an opportunity to examine the returned vouchers, and the plaintiff in error should prevail at least as to these sums.

In my opinion, upon this record, we should not decide as a question of law whether the plaintiff in error or defendant in error was negligent. Plainly they are questions of fact for the jury. The judgment should be reversed.