Louis Weiner, Plaintiff, *v.* Chase National Bank of City of New York, Defendant.

City Court of New York, New York County, June 30, 1931.

*L. & A. U. Zinke* [*Charles W. Silver* of counsel], for the plaintiff.

*Rushmore, Bisbee & Stern* [*George L. Trumbull* of counsel], for the defendant Chase National Bank.

Keller, J. This action is brought by the plaintiff depositor to recover the balance of his deposit in the defendant Chase Bank. The case was heretofore tried before a jury and complaint dismissed at the end of plaintiff's case on motion of defendant. It is apparent from the record on the former trial that the dismissal was based on the decision of a question of fact by the court which should have been submitted to the jury. (Record on appeal, fol. 549.) The

Appellate Term, reversing the judgment of the lower court, said: "The plaintiff made out a *prima facie* case and it was error to dismiss the complaint." In the light of the decided cases this court construes the decision of the Appellate Term to mean that when the fraudulent alteration of the checks was proved, the liability of the bank for their amount was made out, and it was incumbent upon the defendant to establish affirmatively negligence on the plaintiff's part to relieve it from the consequences of its fault or misfortune in paying forged orders. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219, 224.) Or that plaintiff by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hand the check may come. (*Crawford* v. *West Side Bank*, 100 N. Y. 50.) A jury having been waived at the second trial and the defendant having submitted its proof, the question of fact must be resolved by the court. The plaintiff's cause of action is founded on the relation of debtor and creditor existing between a bank and its depositor. The depositor claims that the bank paid $1,233.70, on fifty-one raised checks, more than the amount for which plaintiff originally drew checks. The defendant Chase Bank in its answer denies that it paid an unauthorized amount and in two affirmative defenses sets up: (1) Payment; (2) account stated. A further defense of negligence (a) in drawing the checks, and (b) in failing to examine the bank's monthly statements was allowed at both trials. The Chase Bank impleaded Chatham and Phenix Bank and three other banks on whose indorsements it is alleged it paid the checks in suit; Chatham-Phenix Bank in turn impleaded James Butler Grocery Company, its depositor, who received and cashed or gave merchandise for the checks in suit to Irving Steinberg, an employee of plaintiff. At the trial motions were addressed to the pleadings on which decision was reserved. The motion to amend the answer of Chase National Bank is denied except as to such amendments as were allowed at former trial. Plaintiff's motion to strike out all separate defenses of Chase Bank as insufficient in law denied. Motion by Butler interposing counterclaim against plaintiff denied. (*Municipal Service Real Estate Company, Inc.*, v. *D. B. & M. Holding Corporation*, 232 App. Div. 183.)

The facts as disclosed by the testimony in so far as they are material are as follows: The plaintiff Louis Weiner conducted a restaurant or lunch wagon at No. 719½ First avenue for several years prior to 1928. He could not read or write English with the exception that he could read numbers. He employed one Irving Steinberg as manager and cook. He also intrusted Steinberg with the checking of his bills and with making out and paying checks for bills when they became due. Weiner testified that he was always present when

Steinberg made out the checks; that he compared the amount in figures on the check with the amount in figures on the check stub and bill, and when he found that they corresponded in amount he signed the check. While Weiner testified that he did not know what the written amount in the check was at the time he signed it, because he could not read English, it is apparent from the credible testimony, from an examination of the checks in evidence, and from the inferences to be drawn therefrom, that Steinberg wrote in the amount on the check to which he intended to change the figures and when the check was signed made the necessary changes in the figures to make them the same in amount as the writing. Two of the most frequent instances of alteration will illustrate. (1) Check is made out for $9 in figures which in the written part is nineteen dollars, the figure one is put in front of the figure nine and the check corresponds both in writing and figures. (2) A check is made out for $17, the written part of which is made for forty-seven dollars, which plaintiff signs. When signed Steinberg changed the figure one in front of the seven to a four, and the check corresponds both in figures and writing. There are seventeen of the fifty-one checks in the bill of particulars in which the latter method is employed. All the change that was necessary was the two right angular strokes that made a one into a four. These checks were given to the James Butler Grocery Company, either for merchandise purchased or for part merchandise, the balance being taken in currency for small change to be used by plaintiff in his cash register. The testimony of plaintiff was that he always made out the checks for the merchandise when Butler sent it in. The testimony of Desmond Butler, the manager of the Butler grocery store at which the checks were received, was that frequently Steinberg presented a check for more than the merchandise purchased by him at the Butler store and said that Mr. Weiner wanted the balance in small change. Butler's testimony and his manner on the stand impressed me with his trustworthiness. Furthermore, the frequency of the $17.50 check indicates that Steinberg made out his grocery check for that sum because it was easier to alter when plaintiff had signed it. While an analysis of the testimony just discussed may not be controlling on the issues, it is at least a test of the credibility to be given to Weiner when he says that Butler always made out his bills on plain paper, which accompanied the goods, and that he then made out the check for the amount. If this procedure were followed, Steinberg could not have received the amount for which the checks were raised without collusion with Desmond Butler, which is not claimed. The number of checks claimed to have been raised, according to the particulars, is fifty-one. The amount claimed by

reason of the alterations is $1,233.70. Twenty-four checks were offered in evidence. All others enumerated in the bill of particulars were missing, having been destroyed by Steinberg, plaintiff's dishonest clerk, who confessed to attempted forgery in the third degree and is now in prison. Evidence of the amount for which the missing checks were drawn was excluded. (S. M. pp. 56, 58, 82, 85, 86.) The missing checks, if admissible at all, could be admitted because plaintiff's memory was refreshed as to the amount for which they were drawn in figures. His testimony discloses that his memory was barren on the subject; moreover, defendant's negligence could not be proven unless the alterations were apparent on their face, which was not possible as to checks not offered in evidence. The amount paid on the twenty-four checks in evidence is $1,053.60. The amount which plaintiff claims was authorized is $618.70. This makes the maximum amount on which the Chase Bank could be liable on the evidence $434.90, unless there is negligence by plaintiff by reason of his failure to examine his monthly statements and vouchers or because he drew his checks in such a careless and unbusinesslike manner that he aided the forger in deceiving the bank. That the checks were filled in both in writing and figures at the time plaintiff signed them is admitted. (S. M. p. 119.) An inspection of the checks discloses no alteration of the writing. As said in the *Critten* case: " The question [plaintiff's negligence] was clearly one of fact to be determined largely by an inspection of the checks themselves." I am constrained to find as a fact that the checks when signed by Weiner were made out in the written part in a sum to which Steinberg, after they were signed, changed the figures to correspond with the amount in writing. The claim that plaintiff's order to the bank to pay was contained in the figures only because he could not read the writing is without force. Plaintiff's ignorance of the order contained in writing cannot excuse him from drawing his check in a negligent and unbusinesslike manner if it deceived the defendant Chase Bank, nor is the crudeness of his signature a warning to the bank of his illiteracy.

The plaintiff in his memorandum relies mainly on *Critten* v. *Chemical National Bank* (*supra*) to sustain his claim. The rule of law laid down in the *Critten* case is that when a bank pays a larger sum on a check than ordered by the depositor the question of negligence cannot arise unless the depositor has in drawing his check left blanks unfilled or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the checks may come; that when the fraudulent alteration of the checks was proved the liability of the bank was made out; that the bank, to relieve itself from liability, must affirmatively prove not only

that the depositor was negligent but that it was free from contributory negligence. The Court of Appeals in the *Critten* case modified the decision of the lower court in so far as it found that the failure to examine checks and vouchers when returned from the bank was not negligence. It allowed the plaintiff to recover only on raised checks paid by the defendant bank before the depositor had an opportunity to examine his returned checks and on all checks after the date that a check had been presented by the dishonest employee for payment and payment received. The latter check had been altered on its face as to payee and amount by erasures so crude that they were apparent to any beholder. The court held the bank liable for all subsequent fraudulent alterations because it was grossly negligent in paying the mutilated check. If it had been diligent in the performance of its duty at this time and notified the depositor, all subsequent frauds would not have occurred. Plaintiff claims that the ruling in the *Critten* case as to the mutilated check must be applied in his case; that the alterations of the figures were apparent on the face of the checks and should have been discovered by the bank. An inspection of the twenty-four checks in evidence satisfies the court that in the exercise of due or ordinary care the bank would not have detected the alterations. Notwithstanding the testimony of William McCammon, the manager of the Chase Bank, on cross-examination, that the figures were a little darker and that in Exhibit 3, he said "that's what I would call an alteration," and as to Exhibit 7, "that it did not look regular," inquiry by the court disclosed that the alteration he referred to was made over what appeared to be 00-100 after the written part of the check to conform with $39 12-100 which was written plainly in figures. Inspection of Exhibit 7 discloses that the figures $47 changed from $17 were made heavier or in darker ink. Of course, if there was suspicion of alteration the negligence of plaintiff would not excuse the bank, but suspicion was disarmed by the written order to which defendant had a right to look upon as confirmation of the amount which plaintiff ordered him to pay. (Neg. Inst. Law, § 36.)

The plaintiff further claims that even though he was negligent in examining his returned checks or even though he drew his checks in so careless a manner that the Chase Bank was deceived and paid a larger amount, that bank, if it has recourse against the collecting bank, has not been damaged because it can collect on the guaranty of genuineness covered by the indorsement of the collecting bank. The authorities relied on are *Critten* v. *Chemical Nat. Bank (supra)*; *National Surety Company* v. *President, etc., of Manhattan Co.* (252 N. Y. 247, 255); *Gutfreund* v. *East River National Bank* (251 id.

58, 63). In the *Critten* case the remedy of recourse applied only to one check raised from $22 to $622 collected by the Colonial Bank. The court held that the doctrine of estoppel did not apply and that recourse could be had by the defendant bank against the collecting bank and allowed recovery to plaintiff on that check. The *Gutfreund Case* (*supra*) was decided on the negligence of the bank in paying on forged indorsements without question of their genuineness under circumstances that called for inquiry before payment. In discussing a situation similar to the situation in the instant case, POUND, J., in the *Gutfreund* case said: " If the negligence of the depositor enables the clerk to alter the check and so causes the bank to make payment on a forged order, the depositor is estopped from disputing the authority of the banker to pay. * * * If by their negligence the checks had been made payable to genuine payees who received the amounts thereof, or if the amount of the checks had been raised through their carelessness, the case would have been different. The bank might then rely on the form of the checks and charge plaintiffs with an estoppel." In the *National Surety Case* (*supra*) the court, by KELLOGG, J., pointed out the distinction to be drawn between cases in which there was an " assisted misrepresentation " in which an estoppel would operate against plaintiff and in which recourse may not be had, and cases, as in the *National Surety* case, where the primary negligence was that of the bank in paying on a forged indorsement without proper inquiry, in which recourse may be had against the bank so paying. The application of the doctrine of estoppel in cases of " assisted misrepresentation " is distinguished from cases of failure to examine returned checks, and its effect in defeating plaintiff's right of recourse is sustained by the following additional authorities: Ewart Estoppel, 45; *North British & Mercantile Ins. Co.* v. *Merchants' National Bank* (161 App. Div. 341); *Morgan* v. *United States Mortgage & Trust Co.* (208 N. Y. 218); *Hammerschlag Mfg. Co.* v. *Importers' & Traders' National Bank* ([C. C. A.] 262 Fed. 266). The plaintiff in drawing his checks in writing for an amount different from the part written in figures facilitated the commission of a fraud that deceived the bank and is estopped from showing that the amount paid was not his order to pay.

It follows that the plaintiff's complaint must be dismissed upon the merits, and that the complaint of Chase National Bank against the defendant banks brought in by it and the complaint against all other defendants brought in under subdivision 2 of section 193 of the Civil Practice Act, must be dismissed. Plaintiff is allowed an exception and sixty days to make a case. Please submit findings accordingly.